**Billy ROBICHEAUX, et al., Plaintiffs-Appellees,**

v.

**RADCLIFF MATERIAL, INC., a subsidiary of Southern Industries Corporation, Defendant-Appellant.**

No. 81–3578.

United States Court of Appeals, Fifth Circuit.

Feb. 7, 1983.

Kullman, Lang, Inman & Bee, James D. Carriere, New Orleans, La., for defendant-appellant.

Conery & Breaux, John E. Conery, Franklin, La., for plaintiffs-appellees.

Before WISDOM, RANDALL and TATE, Circuit Judges.

TATE, Circuit Judge:

The plaintiffs, five Louisiana welders, bring suit in federal court, 29 U.S.C. § 216(b), to recover unpaid overtime wages and liquidated damages under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* Made defendant is their alleged employer ("Radcliff"), who principally contends that the welders are independent contractors, rather than "employees" covered by the Act. The district court found the plaintiff welders to have been employees within the meaning of the Act and thus entitled to overtime compensation for work performed for Radcliff in excess of forty hours in any week, section 207 of the Act, 29 U.S.C. § 207.[1] The court rejected, however, their claim for statutory liquidated damages in an additional amount equal to the unpaid overtime wages, section 216(b), 29 U.S.C. § 216(b),[2] in purported exercise of its discretion not to do so when the employer is found to be in good faith, section 260, 29 U.S.C. § 260.[3] The court also awarded the plaintiffs' attorney's fees.

---

[1] Section 207 of the Act states, in part, that, no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

[2] Section 216(b) provides, in part, that,
[a]ny employer who violates the provisions of ... section 207 of this title shall be liable to the employee or employees affected in the amount of ... their unpaid overtime compensation ... and in an additional equal amount as liquidated damages.... The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

[3] Section 260 of the Act grants discretion to the district court in awarding liquidated damages if the judge determines that the employer has been in good faith in failing to pay overtime wages. This section provides:
In any action commenced prior to or on or after May 14, 1947 to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, if the

Radcliff appeals, contesting only the finding of employee status. The welders also request appellate relief. Without having filed a cross-appeal, the plaintiff welders argue in brief and orally for reversal of the denial of liquidated damages. Finding no error in the district court's determination that the welders were employees rather than independent contractors, because of Radcliff's economic control over their work functions and their resultant economic dependence upon Radcliff under the circumstances here shown, and finding that the issue of liquidated damages is not properly before us, we affirm, supplementing the award by allowing attorney's fees and costs on appeal.

*Facts*

The facts relevant to a disposition of this case are essentially undisputed. For a period of time ranging from ten months to three years, each of the plaintiff welders in this case worked for Radcliff. They each signed contract with the company describing themselves to be independent contractors, furnished their own welding equipment (in which they had invested from five to seven thousand dollars), and provided their own insurance and workmen's compensation coverage. In addition, they invoiced Radcliff (for hours worked) on their own business letterheads, filed federal income tax returns on IRS forms as self-employed individuals, and received a higher hourly wage than did other welders employed by Radcliff who did not furnish their own equipment and who were considered by the company to be employees.

Prior to working exclusively for Radcliff, the welders had held themselves out to be independent contractors, some with their own business cards, advertising, company names, and letterheads.

Despite these factors, however, indicating some degree of independence and control, the welders were expected by Radcliff to arrive at work each morning at 7:00 a.m. and work at least until 5:00 p.m. They were given daily work assignments by Radcliff personnel, were told what to work on, where, and how long an assignment should take. They were supervised by Radcliff personnel periodically during the course of the day. Of the work done, the district court found that only 50% was welding work, with the remainder being clean-up work and other semi-skilled mechanical work. One plaintiff testified that, of the welding work, only 30% was performed with the welders' own machines, the remainder being performed with Radcliff equipment. The welders were on 24-hour call, and generally worked 50 to 80 hours per week. Except for insignificant occasions, all work during the ten month to three year period was done for Radcliff. One welder testified, for example, that if he did not appear at the prescribed time in the morning, he knew he would lose his job.

In 1980, Radcliff asked the welders to procure additional insurance. Upon their refusal, the work relationship was terminated. Radcliff now appeals the district court's determination that the welders were employees within the meaning of the Act, and the court's consequent award of accrued overtime wages, attorney's fees and costs.

*"Employee" Status and Standard of Review*

The Act defines an "employee" simply as "any individual employed by an employer", section 203(e)(1), 33 U.S.C. § 203(e)(1); and to "employ" as including "to suffer or permit to work", section 203(g), 33 U.S.C. § 203(g). The term "employee" is thus used "in the broadest sense 'ever . . . included in any act.'" *Donovan v. American Airlines, Inc.,* 686 F.2d 267, 271 (5th Cir. 1982). Various jurisprudential tests have evolved, the focus of which is whether the employees, "as a matter of economic reality, are dependent upon the business to which they render service." *Mednick v. Albert*

employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair

Labor Standards Act of 1938, as amended, the court may in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

*Enterprises, Inc.,* 508 F.2d 297, 299 (5th Cir.1975), quoting *Bartels v. Birmingham,* 332 U.S. 126, 130, 67 S.Ct. 1547, 1550, 91 L.Ed. 1947 (1947).

When there are indicia of the employee's economic independence of the employer, the determination of employee status is not always an easy one to make and will rest on an analysis of the evidence as a whole as to whether the claimant as a matter of economic reality is dependent for his livelihood upon his relationship with his alleged employer. *Hickey v. Arkla Industries, Inc.,* 688 F.2d 1009, 1012–13 (5th Cir. 1982). In this regard, common law concepts of "employee" and "independent contractor" have been specifically rejected by the courts,[4] and five considerations are generally used in gauging the degree of economic dependence of an alleged employee: the skill required; the permanency of the relationship; the employee's investment in facilities; the employer's degree of control; and the degree to which the opportunity for profit or loss is determined by the employer. *Usery v. Pilgrim Equipment Co., Inc.,* 527 F.2d 1308, 1311 (5th Cir.) *cert. denied, sub nom. Pilgrim Equipment Company, Inc. v. Usery,* 429 U.S. 826, 97 S.Ct. 82, 50 L.Ed.2d 89 (1976). No one of these tests is controlling, but

> the final and determinative question must be whether the total of the testing establishes the personnel are so dependent upon the business with which they are connected that they come within the protection of FLSA or are sufficiently independent to lie outside its ambit.

*Usery, supra,* 527 F.2d at 1311–12. Stated another way, "[t]he focal inquiry in the characterization process is thus whether the individual is or is not, as a matter of economic reality, in business for himself." *Donovan v. Tehco, Inc.,* 642 F.2d 141, 143 (5th Cir.1981).

We review the district court's determination as being one of mixed law and fact. *Donovan, supra,* 686 F.2d at 270 note 4. As to the trial court's underlying factual findings and factual inferences deduced therefrom, we are bound by the clearly erroneous standard of Rule 52(a) of the Federal Rules of Civil Procedure. *Id.* However, as to the legal conclusion reached by the district court based upon this factual data, *i.e.,* here that these welders are employees rather than independent contractors, we may review this as an issue of law. *Id.*

*Employee Status Was Correctly Determined*

We conclude, on the basis of the non-clearly erroneous factual findings of the district court, that these welders were correctly determined to be employees within the meaning of the Act. Looking at the "economic realities" of the relationship in light of the factors listed above, it is apparent that the welders were economically dependent on Radcliff.

Radcliff exercised substantial if not complete control over the hours worked and the jobs done by the welders. The duration of the relationship was from ten months to three years for each of them—a substantial period of time—and except for insignificant work elsewhere, was exclusively with Radcliff. The skill required for welding was determined by the district court to be "moderate," and much of the work done was less-skilled non-welding-related work. Although each of the welders had invested his own money in purchasing a welding machine, the district court concluded that a relatively minor portion of the compensation was paid to the employees based upon their furnishing their equipment and that the major part of the compensation was paid for the services of these reliable, always on call, experienced employees. The

---

4. Persons are often found to be "employees" although they possess attributes common to independent contractors. *See, e.g., Donovan v. Tehco, Inc.,* 642 F.2d 141 (5th Cir.1981); *Weisel v. Singapore Joint Venture, Inc.,* 602 F.2d 1185 (5th Cir.1979); *Usery v. Pilgrim Equipment Co., Inc.,* 527 F.2d 1308 (5th Cir.) *cert. denied, sub nom. Pilgrim Equipment Company, Inc. v. Usery,* 429 U.S. 826, 97 S.Ct. 82, 50 L.Ed.2d 89 (1976); *Mednick v. Albert Enterprises Inc.,* 508 F.2d 297 (5th Cir.1975).

district court also found that any opportunity for profit was determined solely by Radcliff's need for their work (rather than, for instance, on the initiative and planning of the individual welders.) *Cf. Hickey v. Arkla Industries, Inc., supra,* 688 F.2d 1009 (manufacturer's sales representative whose income was in the form of commissions rather than wages, and whose opportunity for profit depended on initiative and planning, is not an "employee"); *see also Usery v. Pilgrim Equipment Co., Inc., supra,* 527 F.2d at 1314.

The plaintiff welders in this case did receive higher hourly wages than did the Radcliff welders who did not furnish their welding equipment and who *were* considered by Radcliff to be employees. However, a fair inference from the record is that, as some of even Radcliff's witnesses testified, the higher pay to these "contract" welders resulted from their higher degree of skill, the greater number of hours worked per week, and their more onerous 24-hour on-call duty.

An employee is not permitted to waive employee status. *Donovan v. American Airlines, Inc., supra,* 686 F.2d at 269 note 3. Thus, the fact that the plaintiff welders in this case signed contracts stating that they were independent contractors, while relevant, is not dispositive. *Id.; Usery v. Pilgrim Equipment Co., Inc., supra,* 527 F.2d at 1315. Likewise, the fact that they provided their own insurance coverage, listed themselves as self-employed on their tax returns, and had their own business cards and letterheads, does not tip the balance in favor of independent contractor status where, as here, the economic realities of the situation indicate that the employee depended upon the employer for his livelihood, as tested by the cited criteria. A person's subjective opinion that he is a businessman rather than an employee does not change his status. *Usery, supra,* 527 F.2d at 1315. While some of the welders may have been independent contractors for other companies before commencing work with Radcliff, this fact does not preclude a finding that they exchanged this status for the security of the present employee relationship. They thereby obtained the benefit of steady reliable work over a substantial period of time and became economically dependent on a single source of income.

Under the facts found by the district court, we conclude that it did not err in determining that for purposes of the Act the present welders, rather than being "independent contractors" in business for themselves, were "employees", dependent for their livelihood upon the work they performed for Radcliff on a permanent and full-time basis.[5]

*The Liquidated Damages Issue Is Not Before Us*

The plaintiff welders, without having filed a cross-appeal, contest the district court's finding that Radcliff was in good faith in failing to pay overtime wages. They request that this finding be reversed and that they be awarded liquidated damages in addition to the amount already awarded.[6]

5. Radcliff also contends that these plaintiffs, earning an annual income in excess of $30,000, are not the kind of persons meant to be covered by the Act. There is no support for this contention in either the legislative history of the Act or in the jurisprudence.

6. The district judge found that a three year rather than a two year statute of limitations applied on his determination that Radcliff had "willfully" violated the Act. *See Coleman v. Jiffy June Farms, Inc.,* 458 F.2d 1139 (5th Cir.1971), *cert. denied,* 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972). *See* 29 U.S.C. § 255 which provides, in relevant part:

Any action commenced on or after May 14, 1947, to enforce any cause of action for ...

unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, ...

(a) if the cause of action accrues on or after May 14, 1947—may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued;

The plaintiff welders contend that, in view of this willfullness determination, Radcliff must, as a matter of law, be determined not to have been in good faith. *See* note 3 *supra.* They

The rule is well established, however, that without the filing of a cross-appeal, an appellee " 'may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below.' " *Morley Construction Company v. Maryland Casualty Co.,* 300 U.S. 185, 191, 57 S.Ct. 325, 328, 81 L.Ed. 593 (1937). *See also Alford v. City of Lubbock, Texas,* 664 F.2d 1263, 1272 (5th Cir.1982); *Dupuy v. Dupuy,* 551 F.2d 1005, 1026 note 34 (5th Cir.), *cert. denied,* 434 U.S. 911, 98 S.Ct. 312, 54 L.Ed.2d 197 (1977); *Lettsome v. United States,* 434 F.2d 907, 909–10 (5th Cir.1970); 9 Moore's Federal Practice and Procedure, ¶ 204.11[3] (2d ed.1974); 16 Wright, Miller, Cooper, and Gressman, Federal Practice § 3950 at 367–68 (1977); 15 Wright, Miller, and Cooper, Federal Practice and Procedure § 3904 (1976). The plaintiff welders argue that this rule is not jurisdictionally mandated and may be judicially waived under exceptional circumstances. *Langnes v. Green,* 282 U.S. 531, 538, 51 S.Ct. 243, 246, 75 L.Ed. 520 (1931); 9 Moore's, *supra,* at ¶ 204.11[5]; 15 Wright, Miller, and Cooper, *supra,* § 3904 at 417–418. No such exceptional circumstances producing great inequity are here shown of the extra-ordinary nature that on rare occasions has induced a reviewing court to afford relief to appellees who did not file a cross-appeal. The present appellees simply did not preserve by cross-appeal their claim for liquidated damages, and no more reason is shown for our exercising any power we might have under Fed.R.App.P. 2 to suspend the requirement for a timely cross-appeal, Fed.R.App.P. 4(a)(3), than in any other such instance. The liquidated damages issue is therefore not properly before us.

*Attorney's Fees and Costs on Appeal*

Pursuant to stipulation of the parties, the attorney's fees and costs on this appeal are fixed at $2,000.00. We are able to award this amount to appellee's counsel on this appeal. *See Marston v. Red River Levee & Drainage District,* 632 F.2d 466, 468 (5th Cir.1980).

Accordingly, the judgment of the district court, as supplemented here, is AFFIRMED.

AFFIRMED.

therefore conclude that liquidated damages should have been awarded. In view of our determination that the issue is not properly before us, we decline to answer this contention.