**HUGHES TRAINING, INC., et al.,**

v.

**Gracie COOK and Littleton Cook.**

**No. 4:00–MC0019–E.**

United States District Court,
N.D. Texas,
Fort Worth Division.

Oct. 23, 2000.

Jay Rutherford, Jackson Walker, Fort Worth, TX, for plaintiffs.

Tara S. Tankersley, Lewis & Hutchison, Fort Worth, TX, for defendants.

## ORDER

MAHON, District Judge.

Now before the Court is an Application to Vacate Arbitration Award filed by Applicants Hughes Training, Inc., Hughes Electronics Corporation, and Raytheon Company (collectively "Raytheon"). Respondents Gracie Cook and Littleton Cook (collectively "Respondents") have filed an opposition response to the application, and Raytheon has submitted a reply to the response. The application to vacate the arbitration award is now ripe for disposition. After considering the submissions of the parties, the law, and the record in this matter, the Court makes the following determination.

### I. FACTUAL SUMMARY[1]

Gracie Cook is a former employee of Raytheon who began working in the database engineering department in 1995 under the supervision of Mike Braudaway.

---

1. Unless specifically cited herein, the factual summary is taken from the findings of fact contained in the Arbitrator's award.

The database engineering department is responsible for creating geocells, which use computer simulations to reflect the topography of the countries to whom Raytheon sells its aircraft. The department operated under strict time and budgetary demands. Mr. Braudaway was responsible for the department's completion of projects on time and within or under budget.

Ms. Cook experienced difficulty in performing her job duties. In an apparent attempt to help Ms. Cook improve her performance, Mr. Braudaway paired Ms. Cook with a stronger employee to help train and assist her. Despite her additional training, Ms. Cook's work continued to be viewed as inconsistent and needing improvement.

On May 2, 1996, Ms. Cook was counseled at a meeting called by Mr. Braudaway and attended by two other Raytheon supervisors. At the meeting, Ms. Cook was told of customer complaints regarding her job performance. Later, on May 8, 1996, Mr. Braudaway sent a memorandum entitled "Written Warning" to Ms. Cook describing her deficient job performance and giving her until May 31, 1996 to improve her job skills. Reporter's Record, Respondents' Arbitration Exhibit 15. The "Written Warning" provided that after May 31, 1996, Ms. Cook was to be reevaluated for further corrective action. *Id.* Ms. Cook testified at the arbitration that prior to the "Written Warning," she had little or no warning that her job might be in jeopardy. Reporter's Record, vol. I, pp. 287–288.

Around the time of the "Written Warning," Mr. Braudaway constructed a "test bed" to allow Ms. Cook to demonstrate that she could adequately perform the duties required of her job. Ms. Cook was to complete the test bed on her own and her cubicle mate was instructed not to assist her in its completion.

After receiving the "Written Warning" and beginning work on the test bed, Cook requested a meeting between herself, Mr. Braudaway, and a representative from Raytheon's Human Resources Department. At the meeting, held on May 14, 1996, Ms. Cook showed signs that she was experiencing "stroke-like" symptoms. She was crying, stuttering, and rubbing her left arm as if she were in pain. Mr. Braudaway helped Ms. Cook to her car, and Ms. Cook left work to go to her doctor's office. After the meeting, Ms. Cook went on medical leave, receiving short-term disability benefits, and did not return to work until early August 1996. Reporter's Record, vol. II, p. 32. Ms. Cook later reported to Raytheon that she had a stroke and that was the reason she was on medical leave.[2]

According to Ms. Cook's attorney, while on medical leave, Ms. Cook, "wanted to go back [to work at Raytheon]. She was anxious to go back; she liked working. So she talked [her physician] into releasing her to go back to work on August 5." Reporter's Record, vol. I, p. 13. When Ms. Cook returned to work on August 5, 1996, she provided Raytheon with a medical release from her physician containing no restrictions on her normal job duties. Reporter's Record, Raytheon's Arbitration Exhibit 2. Ms. Cook was instructed to resume her normal job duties and complete the test bed designed to establish her competency as a database engineer. Upon learning that she would have to resume her normal job duties and complete the test bed, Ms. Cook again began to cry and complain that she was having stroke-like symptoms. Within a few days thereafter,

---

**2.** The record also indicates that Ms. Cook had suffered a stroke at some point in 1988, seven years before she became employed at Raytheon. Reporter's Record, vol. I, pp. 15, 112.

Ms. Cook left the employment of Raytheon. *See* Reporter's Record, vol. II, pp. 32–33.

## II. PROCEDURAL BACKGROUND

On or about April 30, 1998, Ms. Cook brought claims against Raytheon in state court for intentional infliction of emotional distress, and later added claims for race discrimination and retaliation, pursuant to the Texas Labor Code, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981, all claims arising from her employment at Raytheon. Mr. Cook also brought a claim in state court for loss of consortium.

Upon beginning her employment with Raytheon, Ms. Cook signed a document entitled "Mutual Agreement to Arbitrate Claims" (hereinafter "Arbitration Agreement"). The Arbitration Agreement provided that "any and all employment disputes not resolved internally through the EPRP [Employer Problem Resolution Procedure] shall be submitted to final and binding arbitration." Reporter's Record, Respondents' Arbitration Exhibit 19, p. 1. The agreement further provided that "Arbitration under this Agreement may be completed and enforced according to the Federal Arbitration Act [FAA] and shall be conducted in accordance with 'the EPRP Arbitration procedure,' which is incorporated herein by reference." *Id.* Raytheon therefore filed a petition to compel arbitration, and the parties eventually agreed to arbitrate Respondents' claims, even though Mr. Cook's claim for loss of consortium was arguably not covered under the Arbitration Agreement. *See Executone Information Systems, Inc. v. Davis,* 26 F.3d 1314, 1323 (5th Cir.1994) ("parties may agree to the arbitration of disputes that they were not contractually compelled to submit to arbitration"). The state court then ordered the parties to arbitration on March 19, 2000. *See* Appendix to Response to Application to Vacate Arbitration Award at 1.

At the arbitration hearing on February 3 and 4, 2000, Respondents' counsel apparently abandoned the race discrimination and section 1981 claims, leaving only Ms. Cook's claims for retaliation and intentional infliction of emotional distress, and Mr. Cook's claim for loss of consortium to be decided at the arbitration. On April 3, 2000, the Arbitrator issued an award ("Arbitrator's Award") which found insufficient evidence to establish Ms. Cook's retaliation claim, but awarded Ms. Cook $200,000 for her intentional infliction of emotional distress claim, and $25,000 to Mr. Cook for his derivative claim for loss of consortium. The Arbitrator based her finding of intentional infliction of emotional distress on Raytheon's assigning Ms. Cook back to her former job duties after she returned to work when Raytheon knew of Ms. Cook's prior health condition. Arbitrator's Award at 12. Raytheon has initiated this proceeding to challenge the Arbitrator's findings of fact and conclusions of law and is requesting this Court to vacate the Arbitrator's Award and render a final judgment in its favor.

## III. DISCUSSION

### A. Jurisdiction

The Federal Arbitration Act ("FAA") provides that the local federal court located where the arbitrator's award was made may vacate the arbitration award upon the motion of any party. 9 U.S.C. §§ 10, 11. However, the FAA does not create an independent basis for federal jurisdiction. *Specialty Healthcare v. St. Mary Parish Hosp.,* 220 F.3d 650, 653 n. 5 (5th Cir.2000). Thus, arbitration provisions can be enforced in federal court only where federal jurisdiction is otherwise independently established, such as by diver-

sity jurisdiction. *Southland Corp. v. Keating,* 465 U.S. 1, 16, 104 S.Ct. 852, 859, n. 9, 79 L.Ed.2d 1 (1984).

In the present case, Raytheon alleges in its Application to Vacate the Arbitration that Hughes Training, Inc. merged into Raytheon in 1998 and Hughes Electronics Corporation merged its defense business into Raytheon in 1997. Application to Vacate Arbitration at 1. Raytheon, the successor-in-interest to both Hughes and the defense portion of Hughes Electronics Corporation, is incorporated in Delaware and has its principal place of business in Massachusetts. *See id.* Mr. and Ms. Cook are residents of Texas. *See id.* Since the amount in controversy in this matter exceeds $75,000 and there is a complete diversity of citizenship, this proceeding is properly before this Court.

### B. *Standard of Review*

■ Typically, a district court's review of an arbitration award is extraordinarily narrow under the FAA. *Antwine v. Prudential Bache Securities, Inc.,* 899 F.2d 410, 413 (5th Cir.1990). Indeed, the Fifth Circuit has stated that ordinarily, arbitration awards will not be vacated unless: (1) the award was procured by corruption, fraud, or undue means; (2) there is evidence of corruption among the arbitrator; (3) the arbitrators were guilty of misconduct which prejudiced the rights of one of the parties; or (4) the arbitrators exceeded their powers. *Gateway Technologies, Inc. v. MCI Telecommunications Corp.,* 64 F.3d 993, 995 (5th Cir.1995).[3] However, the parties may agree to a broader judicial review of an arbitration award. *See Gateway,* 64 F.3d at 996 (agreement that errors of law shall be

subject to appeal required court to review de novo legal issues decided by Arbitrator); *see also Lapine Technology Corp. v. Kyocera Corp.,* 130 F.3d 884, 888 (9th Cir. 1997) (courts must honor agreement providing that arbitration award shall be reviewable for errors of fact or law). As recognized by the Fifth Circuit in *Gateway,* "[t]here is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Gateway,* 64 F.3d at 997 n. 3 (*quoting Volt Info. Sciences v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 479, 109 S.Ct. 1248, 1256, 103 L.Ed.2d 488 (1989)).

In this case, the Arbitration Agreement provides for an expanded judicial review. Specifically the agreement provides that "in actions seeking to vacate award, the standard of review to be applied to the arbitrator's findings of fact and conclusions of law will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury." Reporter's Record, Respondents' Arbitration Exhibit 19 at 3.

■ Curiously, after voluntarily submitting to the arbitration process and receiving a substantial arbitration award, Respondents argue that the expanded standard of review cannot be applied because there is no evidence in the record that Ms. Cook agreed to the arbitration or signed the Arbitration Agreement. However, a review of the record reveals that the Arbitration Agreement was signed by Ms. Cook and was Respondents' Exhibit Number 19 at the arbitration hearing. The agreement was even

---

**3.** In the context of this limited review, the Fifth Circuit has also recognized that a district court may vacate awards that are arbitrary or capricious, or in violation of public

policy. *See e.g., Forsythe Intern., S.A. v. Gibbs Oil Co.,* 915 F.2d 1017, 1021 (5th Cir.1990) (recognizing that an arbitration award should be vacated if it is fundamentally unfair).

referenced by Respondents' counsel during her opening statement. Reporter's Record, vol. I, p. 17. Also, in the March 19, 1999 state court order requiring the parties to attend the arbitration, the state court held that "an arbitration agreement exists between plaintiff Gracie Cook and defendants, and [the court] finds that plaintiff Gracie Cook's claims raised in this lawsuit fall within the scope of the arbitration agreement." Appendix to Response to Application to Vacate Arbitration Award at 1. The record before the Court indicates that Respondents signed the Arbitration Agreement, actively and voluntary participated in the arbitration, and there is no evidence to indicate that the Respondents protested the validity of the agreement. *See Emerald Texas, Inc. v. Peel,* 920 S.W.2d 398, 402 (Tex.App.— Houston [1st Dist.] 1996, no writ) (holding that parties, "having signed [the contract], they are presumed to know its contents"); *see also Legion Ins. Co. v. Insurance General Agency, Inc.,* 822 F.2d 541, 543 (5th Cir.1987) (finding that a district court is generally not required to hold an evidentiary hearing on motions to vacate arbitrations and that issues may be resolved on the record submitted by the parties). Respondents' argument that the Arbitration Agreement and its terms does not apply to this proceeding is in error. *See Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.,* 9 F.3d 1060, 1064 (2d Cir.1993) (party estopped from denying its obligation to arbitrate under agreement even when it was not a signatory when it had notice of the agreement and did not object to arbitration clause contained therein); *Gvozdenovic v. United Air Lines, Inc.,* 933 F.2d 1100, 1105 (2d Cir.1991), *cert. denied,* 502 U.S. 910, 112 S.Ct. 305, 116 L.Ed.2d 248 (1991)

(where party participated in arbitration, and neither refused to arbitrate nor objected to arbitration, agreement to arbitrate could be implied); *accord Ripmaster v. Toyoda Gosei, Co., Ltd.,* 824 F.Supp. 116 (E.D.Mich.1993) (employee held to be bound by arbitration clause which only his its employer signed).

 Applying the heightened standard of review as provided in the Arbitration Agreement, this Court must apply the standard of review used by an appellate court reviewing a judgment from a bench trial. Under this standard, appellate courts review a trial court's fact-findings, and the factual inferences deduced from them, by a "clearly erroneous" standard of review. *Read v. U.S. ex rel. Dept. of Treasury,* 169 F.3d 243, 247 (5th Cir.1999); *Barrett v. U.S.,* 51 F.3d 475, 479 (5th Cir. 1995); *Robicheaux v. Radcliff Material, Inc.,* 697 F.2d 662, 666 (5th Cir.1983). As in the present case, where the discreet findings of fact are essentially uncontested by the parties, the review of the lower tribunal's factual findings is merely plenary. *See Read,* 169 F.3d at 247. However, with regard to the legal conclusions reached by the Arbitrator, this Court must apply the *de novo* standard of review used by appellate courts to examine issues of law. *Read,* 169 F.3d at 247; *Barrett,* 51 F.3d at 478; *Robicheaux,* 697 F.2d at 666.

## C. Intentional Infliction of Emotional Distress

 Raytheon contends that its conduct could not, as a matter of law, constitute "intentional" infliction of emotional distress.[4] An employee may only recover damages for intentional infliction of emotional distress in an employment context when they can establish the elements of the cause of action. *See Wornick Co. v.*

---

4. Texas, of course, does not recognize the tort of "negligent" infliction of emotional distress.

*See Boyles v. Kerr,* 855 S.W.2d 593, 595 (Tex. 1993).

*Casas,* 856 S.W.2d 732, 734 (Tex.1993). To recover damages for "intentional" infliction of emotional distress, a plaintiff must prove that: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Burden v. General Dynamics Corp.,* 60 F.3d 213, 218 (5th Cir.1995); *MacArthur v. University of Tex. Health Ctr.,* 45 F.3d 890, 898 (5th Cir.1995); *McKethan v. Texas Farm Bureau,* 996 F.2d 734, 742 (5th Cir.1993), *cert. denied,* 510 U.S. 1046, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994); *Twyman v. Twyman,* 855 S.W.2d 619–22 (Tex.1993).

 The second element of the tort requires that the "conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman,* 855 S.W.2d at 621; *see also Johnson v. Merrell Dow Pharmaceuticals, Inc.,* 965 F.2d 31, 33 (5th Cir. 1992); *Cole v. Sisters of Charity of the Incarnate Word,* 79 F.Supp.2d 668, 673 (E.D.Tex.1999). Insensitive or rude behavior, insults, indignities, threats, annoyances, party oppressions, or other trivialities do not rise to the level of extreme and outrageous conduct. *Wilson v. Monarch Paper Co.,* 939 F.2d 1138, 1143 (5th Cir. 1991); *GTE Southwest, Inc. v. Bruce,* 998 S.W.2d 605, 612 (Tex.1999); *Porterfield v. Galen Hospital Corp.,* 948 S.W.2d 916, 920 (Tex.App.—San Antonio 1997, writ denied); Restatement (Second) of Torts, § 46, cmt. d. (1965). Extreme and outrageous behavior will only be found when the emotional distress is so severe that no reasonable person could be expected to endure it. *Fisher v. State Farm Mut. Auto. Ins. Co.,* 999 F.Supp. 866, 872 (E.D.Tex.1998), *aff'd,* 176 F.3d 479 (5th Cir.1999); *Benavides v. Moore,* 848 S.W.2d 190, 195 (Tex.App.—Corpus Christi 1992, writ denied). The question of whether the alleged wrongful conduct is extreme and outrageous is a threshold question of law to be addressed by the Court. *Richards v. Seariver Maritime Financial Holdings,* 59 F.Supp.2d 616, 640 (S.D.Tex.1998), *aff'd,* 189 F.3d 467 (5th Cir.1999); *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex. 1994).

 Texas law takes a very "strict approach to intentional infliction of emotional distress claims arising in the workplace." *Bruce,* 998 S.W.2d at 612. Courts recognize that "to properly manage its business, an employer must be able to supervise, review, criticize, demote, transfer, and discipline employees." *Bruce,* 998 S.W.2d at 612 (*citing Johnson v. Merrell Dow Pharmaceuticals, Inc.,* 965 F.2d 31, 34 (5th Cir.1992)). "Although many of these acts are necessarily unpleasant for the employee, an employer must have latitude to exercise these rights in a permissible way, even though emotional distress results." *Bruce,* 998 S.W.2d at 612 (citations omitted). Indeed, even conduct which may be illegal may not be the sort of conduct constituting extreme and outrageous conduct in an employment context. *Thomas v. Clayton Williams Energy, Inc.,* 2 S.W.3d 734, 741 (Tex.App.—Houston [14 Dist.] 1999, no pet.); *accord Ugalde v. W.A. McKenzie Asphalt Co.,* 990 F.2d 239, 243 (5th Cir.1993)(supervisor's reference to plaintiff by racial slurs does not support a claim for intentional infliction of emotional distress). "Even the wrongful transfer, failure to promote, or termination of an employee does not, standing alone, constitute intentional infliction of emotional distress." *City of Midland v. O'Bryant,* 18 S.W.3d 209, 216 (Tex.2000). As a result, Texas courts recognize claims for intentional infliction of emotional distress does

not arise from ordinary employment disputes.[5] *MacArthur*, 45 F.3d at 898; *Bruce*, 998 S.W.2d at 612. "Only in the most unusual of employment cases does the conduct move out of the realm of an ordinary employment dispute and into the classification of extreme and outrageous conduct." [6] *Porterfield*, 948 S.W.2d at 920.

In the present case, the Arbitrator found that Raytheon's conduct was extreme and outrageous because Raytheon put Ms. Cook back to work at her normal job duties when it

> *knew (and had observed) Ms. Cook's response to this added stress a few months earlier and the stroke-like physical symptoms that had resulted,* putting Ms. Cook right back in that same stress-inducing situation was extreme and outrageous. By doing so, Raytheon knowingly placed Ms. Cook's physical and mental health in jeopardy.

Arbitrator's Award at 12 (emphasis in original).

Reviewing the Arbitrator's finding under a *de novo* standard of review, the Court finds that, as a matter of law, Raytheon's returning Ms. Cook to her normal job duties after her absence from work, when she was not restricted by her physician, did not constitute "extreme and outrageous" conduct. All of the actions attributed to Raytheon were within the scope of supervising, reviewing, criticizing, and disciplining Ms. Cook or were a result of those activities. Because the Arbitrator erred in finding extreme and outrageous conduct, without discussing the remaining elements, the Court finds that Raytheon's Application to Vacate the Arbitration Award for intentional infliction of emotional distress should be GRANTED.

### D. Loss of Consortium Claim

The Arbitrator found that Mr. Cook was affected by Raytheon intentionally inflicting emotional distress on his wife, and awarded $25,000 to Mr. Cook for his claim of loss of consortium. However, Mr. Cook's claim for loss of consortium is de-

**5.** *See, e.g., Benningfield v. City of Houston,* 157 F.3d 369, 379 (5th Cir.1998) (requiring an employee to work under a supervisor she disliked does not ordinarily constitute outrageous conduct); *Humphreys v. Medical Towers, Ltd.,* 893 F.Supp. 672, 681 (S.D.Tex. 1995), *aff'd,* 100 F.3d 952 (5th Cir.1996) (behavior held not to be extreme and outrageous where defendant encouraged employees to act with insubordination toward plaintiff, defendant called plaintiff profane name, defendant told plaintiff she was incompetent and should quit, and defendant treated her with blatant hostility during meetings); *City of Midland v. O'Bryant,* 18 S.W.3d 209, 216 (Tex.2000)(holding that an employer's decision to revise job description or to change the nature or compensation for certain positions was not outrageous and extreme conduct); *Wornick Co. v. Casas,* 856 S.W.2d 732, 735 (Tex.1993) (employer's conduct in firing an employee for allegedly possessing incriminating information, then having a security guard escort employee off the premises in the pres-

ence of her co-workers was not extreme and outrageous conduct).

**6.** *See, e.g., Wilson v. Monarch Paper Co.,* 939 F.2d 1138, 1145 (5th Cir.1991) (holding that an employer's systematic and intentional actions to humiliate the plaintiff, a long-time executive with a college education and 30 years experience, and to forcing him to quit by requiring him to do menial, janitorial duties was extreme and outrageous conduct); *Dean v. Ford Motor Credit Co.,* 885 F.2d 300, 307 (5th Cir.1989) (recognizing that supervisor's act of placing checks in the employee's purse to make it appear that she was a thief and to put her in fear of criminal prosecution was extreme and outrageous conduct); *Bruce,* 998 S.W.2d at 615 (extreme and outrageous behavior found in an employment context only where there was an ongoing pattern of grossly abusive, physically threatening, and degrading conduct, including the use of vulgarity, screaming, physically charging at and frightening employees).

rivative of his wife's intentional infliction of emotional distress claim. *Benavides v. County of Wilson*, 955 F.2d 968, 975 (5th Cir.1992). Because this Court finds that the Arbitrator erred in awarding damages to Ms. Cook for the claim of intentional infliction of emotional distress, Mr. Cook's derivative claim for loss of consortium is barred. *Id.; Reed Tool Co. v. Copelin*, 610 S.W.2d 736, 739 (Tex.1980). Raytheon's Application to Vacate the Arbitration Award for loss of consortium damages to Mr. Cook is GRANTED.[7]

### CONCLUSION

Applying the standard of review found in the Arbitration Agreement, the Court finds that the Arbitrator erred in finding that Raytheon engaged in extreme and outrageous conduct by returning Ms. Cook to her normal work duties after she returned from medical leave. Because Mr. Cook's claim for loss of consortium is derivative of his wife's claim of intentional infliction of emotional distress, an award to Mr. Cook is barred.

The Court therefore ORDERS that Raytheon's Application to Vacate the Arbitration Award is GRANTED. Judgment is RENDERED in favor of Raytheon regarding Respondents' claims for intentional infliction of emotional distress and loss of consortium.

An appropriate judgment shall be entered herewith, vacating the Arbitration Award and RENDERING judgment that Gracie and Littleton Cook take nothing.

7. Raytheon also challenges the Arbitrator's conditional awarding of attorney's fees to Respondents in the event that the Court upholds the Arbitration Award. However, since the Court finds that the Arbitration Award should be vacated, Raytheon's challenge to the conditional award of attorneys' fees award need not be considered by the Court.