**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-2734
_____

MIKAEL M. SAFARIAN

v.

AMERICAN DG ENERGY INC.

v.

MULTISERVICE POWER, INC.


Mikael Safarian,
                          Appellant


On Appeal from the United States District Court
for the District of New Jersey
(District Court No.: 3-10-cv-06082)
District Judge: Honorable Anne E. Thompson


Argued on June 2, 2015


Before: RENDELL, HARDIMAN, and VANASKIE, Circuit Judges

(Opinion filed: July 21, 2015)

Maurice W. McLaughlin, Esq. (Argued)
Pauline M.K. Young, Esq.
McLaughlin & Nardi
37 Vreeland Avenue
Totowa, NJ 07512
                    Counsel for Appellants

Rodman E. Honecker, Esq.  (Argued)
Windels, Marx, Lane & Mittendorf
120 Albany Street Plaza, 6th Floor
New Brunswick, NJ 08901
                    Counsel for Appellee

Stephen G. Yoder, Esq.
United States Securities & Exchange Commission
100 F. Street, N.E. Mail Stop 1090
Washington, DC 20549

Dean Romhilt, Esq.     (Argued)
United States Department of Labor
Office of Solicitor, Room N-2716
200 Constitution Avenue, N.W.
Washington, DC 20210
                    Counsel for Amicus Appellants

O P I N I O N[*]

**RENDELL**, Circuit Judge:

The District Court granted summary judgment for Appellee American DG Energy

Inc. ("ADG") on all of Appellant Michael Safarian's claims.[1]  The central issue on appeal

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Safarian brought claims for violation of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), violation of the Fair Labor Standards Act ("FLSA"), violation of New Jersey's Wage and Hour Law, breach of contract,

2

is whether the District Court correctly held that Safarian was an independent contractor, and not an employee of ADG. While we affirm in part, we will also vacate and remand in part because the District Court did not reason through the factors that are important for determining employment status under the Fair Labor Standards Act ("FLSA") and New Jersey state law.

## I. Background

ADG operates in the utility business, and Safarian is an engineer who serviced and installed ADG's machines from approximately December 2006 to April 2010. Safarian worked for ADG Mondays through Fridays, as well as some weekends, working at least 40 hours and sometimes over 50 hours per week. ADG told him which job site to visit and which services to perform. ADG provided Safarian with materials to install and fix its devices, business cards, cellphone, beeper, business email address, and clothes with the company logo. His supervisor described him as ADG's "boots on the ground" and "a face of the company." (App. 914, 715.)

Safarian originally understood that he was "being hired as a full-time employee," but then ADG told him "that it was to the best of the company's interest to temporarily put you on as a subcontractor." (App. 814a.) As a result, Multiservice, a company that Safarian owned, invoiced ADG and Multiservice paid Safarian. Multiservice invoiced ADG for Safarian's time on a per-hour basis. Safarian occasionally brought an assistant

---

promissory estoppel, violation of the Conscientious Employee Protection Act ("CEPA"), and violation of public policy under *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58, 61 (1980).

to the ADG job sites, and Multiservice billed ADG for the assistant's labor as well. Safarian also took a non-ADG job in Russia for two months.

While working at ADG sites, Safarian discovered that ADG was performing certain work without appropriate permits and that ADG was overbilling customers. Safarian objected to ADG's permit violations and overbilling practices. Safarian claims that ADG terminated him in retaliation for these disclosures.

The District Court noted that in order to bring claims under the federal statute, the FLSA, or New Jersey state laws, namely the CEPA, *Pierce*, and the New Jersey Wage and Hour Law, Safarian must be an employee of ADG. The District Court stated that determining whether Safarian was an employee required an examination of all the circumstances, and it cited factors that we have listed as determinative in FLSA cases, citing *Martin v. Selker Bros.*, 949 F.2d 1286 (3d Cir. 1991). The District Court then noted that some of the facts of Safarian's relationship with ADG were "often associated with employee relationships," such as the continuity of the relationship, the importance of Safarian's work to the business, payment on a per-hour basis, and the provision of uniforms, tools, and a phone. (App. 9.) The District Court concluded, however, that Safarian was an independent contractor because he "structured his relationship with [ADG] as an independent contractor and gained certain benefits that come with this status." (*Id.*) "After experiencing the benefits available through this arrangement, [Safarian] 'stumbles' in an effort to characterize himself as an employee of [ADG]." (*Id.*)

4

## II. Analysis

Safarian's "employment status . . . is a legal conclusion," and "[t]hus, our standard of review of the legal determination of employee status is plenary." *Martin*, 949 F.2d at 1292.[2]

Under the FLSA, "the term 'employee' means any individual employed by an employer." 29 U.S.C. § 203(e)(1). This statutory definition is "necessarily broad to effectuate the remedial purposes of the Act." *Martin*, 949 F.2d at 1293. In accordance with this "expansive definition[]," courts must "look to the economic realities of the relationship in determining employee status under the FLSA." *Id.*; *see also Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 301 (1985) ("The test of employment under the Act is one of 'economic reality' . . . .") (quoting *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961)). There are six factors to determine whether a worker is an "employee" under the FLSA:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

*Martin*, 949 F.2d at 1293 (quoting *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1382 (3d Cir. 1985)).

---

[2] In general, "we employ a plenary standard in reviewing orders entered on motions for summary judgment." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

5

Even though the District Court listed these factors, it did not reason through them. Instead, it focused on the *structure* of the Safarian-ADG relationship, noting, for example, that Safarian billed his work for ADG through Multiservice and that Safarian used Multiservice to claim tax advantages. However, it is the economic realities of the relationship as analyzed using the *Martin* factors, not the structure of the relationship, that is determinative. Indeed, the issue arises *because* the parties structured the relationship as an independent contractor, but the caselaw counsels that, for purposes of the worker's rights under the FLSA, we must look beyond the structure to the economic realities. Thus, the dissent's concern with the structure is beside the point.[3]

In *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 726 (1947), the Supreme Court held that meat boners in a factory were employees, even though the boners owned their own tools, hired employees to assist with the boning operation, and were not paid hourly. The *Rutherford* court noted that "[w]hile profits to the boners depended upon the efficiency of their work, it was more like piecework than an enterprise that actually depended for success upon the initiative, judgment or foresight of the typical independent contractor." *Id.* at 730. In *Tony and Susan Alamo Foundation*, the Supreme Court held that workers—who testified that they were not employees, did not work for material rewards, and volunteered for ministry purposes—were employees within the meaning of the

---

[3] Moreover, I view the analysis of the *Martin* factors as pointing more toward employee status for Safarian than our dissenting colleague; but it will be for the District Court to address these factors in the first instance.

6

FLSA because they were "entirely dependent upon the Foundation for long periods, in some cases several years." *Tony & Susan Alamo Found.*, 471 U.S. at 301 (quoting *Donovan v. Tony & Susan Alamo Found.*, 567 F. Supp. 556, 562 (W.D. Ark. 1982)). *See also Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1385-86 (3d Cir. 1985) (holding that workers were employees under the FLSA because they "were not in a position to offer their services to many different businesses and organizations," "worked on a continuous basis with DialAmerica and were able to work only when and if DialAmerica was in need of their services," and, consequently, "were economically dependent on DialAmerica"); *Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 667 (5th Cir. 1983) (holding that workers were employees because "the fact that [workers] provided their own insurance coverage, listed themselves as self-employed on their tax returns, and had their own business cards and letterheads, does not tip the balance in favor of independent contractor status where, as here, the economic realities of the situation indicate that the employee depended upon the employer for his livelihood"); *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013) ("This [FLSA] inquiry is not governed by the 'label' put on the relationship by the parties or the contract controlling that relationship, but rather focuses on whether 'the work done, in its essence, follows the usual path of an employee.'") (quoting *Rutherford*, 331 U.S. at 729).

The fundamental point here is that courts must look to the economic realities, not the structure, of the relationship between the workers and the

7

businesses.  Accordingly, we will vacate and remand so that the District Court can apply the proper test by examining the facts in light of the *Martin* factors and weighing them in coming to a conclusion regarding Safarian's employee status. We will also vacate the District Court's grant of summary judgment under CEPA and *Pierce* because the District Court did not consider the factors under New Jersey law for determining whether Safarian was an employee under those laws. *See Pukowsky v. Caruso*, 711 A.2d 398, 404 (N.J. Super. Ct. App. Div. 1998) (listing 12 factors that courts should consider to determine a worker's status).

However, we will affirm the District Court's grant of summary judgment in favor of ADG on Safarian's Dodd-Frank,[4] breach of contract, New Jersey Wage and Hour Law, and promissory estoppel claims.  We will also affirm the Magistrate Judge's decisions regarding discovery.  "[W]e review a district court's denial of a discovery motion for an abuse of discretion," and there was no abuse of discretion here.  *Lloyd v. HOVENSA, LLC.*, 369 F.3d 263, 274 (3d Cir. 2004).

### III. Conclusion

Accordingly, we will affirm in part and vacate in part.  We will affirm the District Court's rulings on the Dodd-Frank, New Jersey Wage and Hour Law, promissory

---

[4] In order to receive Dodd-Frank whistleblower protection, an employee must report "conduct which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders."  18 U.S.C. § 1514A(a)(1).  The District Court correctly determined that the misconduct that Safarian reported did not fall into any of these categories.  Amicus Department of Labor expressed concern that the District Court's opinion could be read narrowly to imply that Dodd-Frank whistleblower protection only applies to lawyers, accountants, or auditors who report shareholder fraud.  We do not read the District Court opinion so narrowly.

estoppel, and breach of contract claims and its discovery orders. We will vacate the entry of summary judgment on Safarian's FLSA, CEPA, and *Pierce* claims, and remand for further proceedings.

*Mikael M. Safarian v. American DG Energy Inc. v. Multiservice Power, Inc.*
No. 14-2734

HARDIMAN, *Circuit Judge*, dissenting in part.

I join the panel's opinion except that I disagree with my colleagues' decision to vacate and remand for a redetermination of Safarian's employment status under the Fair Labor Standards Act. In my view, the record supports the District Court's conclusion that Safarian is not an employee of American DG Energy Inc. (ADG) for purposes of federal law.

In the seminal case of *Rutherford Food Corp. v. McComb*, the Supreme Court explained that "the determination of the [employment] relationship does not depend on . . . isolated factors but rather upon the circumstances of the whole activity." 331 U.S. 722, 730 (1947). To help courts in making the employment-status determination, we enunciated six factors:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

*Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991). After articulating these six factors, we explained that "[t]here is no single test to determine whether a person is an employee or an independent contractor for purposes of the FLSA." *Id.* We further cautioned that "neither the presence nor the absence of any particular factor is

dispositive." *Id.*

Here, the District Court noted many of the facts germane to the *Martin* factors in the background section of its opinion. For example, the District Court noted that Safarian is an engineer who worked for ADG five days a week for over three years and was told by ADG where to go and what services to perform. The Court also indicated that Safarian was supplied materials by ADG and was paid by ADG through Multiservice Power, Inc.—a company Safarian owned. *See Safarian v. Am. DG Energy Inc.*, 2014 WL 1744989, at *1 (D.N.J. Apr. 29, 2014). The Court then observed several key facts about Multiservice, namely, that it billed ADG by invoice, had its own insurance, hired its own accountant, filed payroll taxes for Safarian, owned its own company vehicle (that Safarian used), and took advantage of various small business benefits. *Id.* Finally the Court discussed some statements Safarian made concerning his employment status in response to a tax issue and two offers of employment from ADG. *Id.*

In its analysis section, the District Court began by rightly noting that the totality of the circumstances and the *Martin* factors determine whether a worker is an employee or an independent contractor. *Id.* at *2–*3. Though the Court acknowledged that some facts favor each side, it found that Safarian benefitted from the structure of his relationship with ADG—by, for example, claiming certain deductions on Multiservice's taxes—and thus was an independent contractor.

According to the majority, the Court's analysis was overly formalistic. I disagree.

2

Seven decades of precedent emphasize a flexible, totality-of-the-circumstances employment-status inquiry; or, in other words, exactly the type of analysis conducted by the District Court.

The majority's principal criticism of the District Court is that it didn't rely on the *Martin* factors. As noted above and further explained below, I don't think it's necessary for a court to organize its analysis according to the *Martin* factors. But even if such organization were required, the District Court's opinion passes muster for the reasons that follow.

### 1. Control

The District Court touched on this factor when it noted that Safarian is an engineer and that ADG told Safarian where to go and what services to perform. Safarian's technical expertise meant that he had a certain amount of discretion, even though ultimate decisions concerning his work were made by supervisors at ADG.

### 2. Opportunity for Profit or Loss

The second factor weighs in favor of Safarian because, as noted by the District Court, he was paid (through invoices to Multiservice) on an hourly basis rather than by each project he worked on.

### 3. Investment in Equipment and Helpers

This factor cuts in ADG's favor because Multiservice owned various pieces of equipment that Safarian sometimes used when working for ADG, and Safarian then

3

claimed deductions on Multiservice's taxes for depreciation of that equipment. Though not mentioned by the District Court, it is undisputed that Safarian occasionally brought his nephew to ADG jobs as a helper and then billed ADG (through Multiservice) for his nephew's work. App. 291, 302, 351–55.

### 4. *Special Skill*

Engineering is a profession that requires special skills, as indicated by Safarian's undergraduate degree in nuclear science and nuclear engineering and his professional license to work on gas turbine engines of unlimited horsepower. App. 283–84. Though the District Court only mentioned that Safarian was an engineer, it was sufficient shorthand for conveying the fact that he had special skills, especially when noted in conjunction with his work installing and servicing complex cogeneration systems.

### 5. *Permanence*

The District Court observed that Safarian worked for ADG for over three years.

### 6. *Integral to Business*

Finally, the District Court noted that ADG is in the utility business and that Safarian serviced and installed ADG's systems. Though the District Court could have described in more detail how Safarian's work was integral to ADG, that would have been unnecessary (as indicated by ADG conceding this factor on appeal).

While the District Court elucidated facts supporting an analysis under the *Martin* test, it candidly stated that "the question of employment status is far from

4

straightforward," *Safarian*, 2014 WL 1744989, at *3, and then discussed facts that don't neatly conform to *Martin*'s analytical framework. In my view, two facts make this case exceptional enough to justify departing from a rigid application of the *Martin* factors in order to better reflect the economic realities of the relationship.

First, Safarian's employment by Multiservice while performing work for ADG is unique.[1] In fact, neither Safarian nor the majority can point to a single decision where a court said that the business organization of an alleged employee is irrelevant in determining employment status under the FLSA. There was thus nothing improper about the District Court looking to the benefits Safarian received by performing work for ADG through Multiservice—all the District Court did was force Safarian to "take the bitter with the sweet." *Arnett v. Kennedy*, 416 U.S. 134, 154 (1974) (plurality opinion). The Tenth Circuit when confronted with a similar situation adhered to a common sense analysis that is more faithful to Supreme Court precedent than the majority's approach here. *See Barlow v. C.R. England, Inc.*, 703 F.3d 497, 506 (10th Cir. 2012) (considering the implications of a worker performing services for the alleged employer through a company that the worker owned). The Supreme Court has also indicated that this consideration is legitimate. *See Rutherford*, 331 U.S. at 730 ("The group had no business organization that could or did shift as a unit from one slaughter-house to another.").

---

[1] The District Court expressly discussed the benefits Safarian obtained from working for ADG through Multiservice, noting, for example, that Multiservice claimed certain tax deductions.

5

The second unique feature of this case is that Safarian is an educated professional who was highly compensated—to the tune of almost $600,000 during his three-plus years with ADG. If the central concern of the FLSA is preventing employers from taking advantage of a monopsony, *see Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1542 (7th Cir. 1987) (Easterbrook, J., concurring), then applying its protections to Safarian would be anomalous to say the least. Moreover, while performing work for ADG, Safarian turned down an employment offer that apparently would have paid well into the six figures.

For the reasons stated, I join the panel's opinion in all respects except that I would affirm the judgment of the District Court on Safarian's FLSA claim.