United States Court of Appeals,

Fifth Circuit.

No. 92-4948.

Bennis CARRELL, et al., Plaintiffs-Appellants,

v.

SUNLAND CONSTRUCTION, INC., Defendant-Appellee.

Aug. 25, 1993.

Appeal from the United States District Court for the Western District of Louisiana.

Before REAVLEY, DUHÉ and BARKSDALE, Circuit Judges.

REAVLEY, Circuit Judge:

Twenty welders sued Sunland Construction Inc. (Sunland), claiming that Sunland violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.,* by failing to pay them overtime compensation. The district court dismissed the welders' lawsuit on the ground that they were not "employees" within the meaning of the FLSA. We affirm.

## I. BACKGROUND

Sunland constructs transmission pipelines for natural gas companies. For each pipeline construction project, Sunland hires pipe welders and classifies them as independent contractors. The welders typically work 60 hours per week and are fully aware that Sunland considers them independent contractors. Twenty former welders (the Welders), who worked for Sunland at various times from 1987 to 1990, brought this action pursuant to section 16(b) of the FLSA. *See* 29 U.S.C. § 216(b). They claim that Sunland violated section 7(a)(1) of the FLSA by failing to pay them overtime compensation. *See* 29 U.S.C. § 207(a)(1) (requiring employers to pay employees at least 1.5 times the regular rate for hours worked in excess of 40 hours per week). The parties stipulated to many facts and filed cross-motions for summary judgment on the issue of employee status. The district court ruled that the Welders were independent contractors and not "employees" covered by the FLSA. Based on this ruling, the court dismissed the Welders' FLSA claims. The Welders appeal.

## II. ANALYSIS

To determine employee status under the FLSA, we focus on whether the alleged employee, as a matter of economic reality, is economically dependent upon the business to which he renders his services. *Brock v. Mr. W Fireworks, Inc.,* 814 F.2d 1042, 1043, 1054 (5th Cir.), *cert. denied,* 484 U.S. 924, 108 S.Ct. 286, 98 L.Ed.2d 246 (1987). Essentially, our task is to determine whether the individual is, as a matter of economic reality, in business for himself. *Donovan v. Tehco, Inc.,* 642 F.2d 141, 143 (5th Cir.1981). To gauge the degree of the worker's dependency on the alleged employer, we consider five factors: the degree of control exercised by the alleged employer, the extent of the relative investments of the worker and alleged employer, the degree to which the worker's opportunity for profit and loss is determined by the alleged employer, the skill and initiative required to perform the job, and the permanency of the relationship. *Mr. W Fireworks,* 814 F.2d at 1043. These factors are merely aids in determining the question of dependency, and no single factor is determinative. *Id.* at 1054. We review *de novo* the district court's conclusion that the Welders were independent contractors. *Id.* at 1045. The parties have stipulated to the relevant facts underlying our determination.

*a. Permanency of the relationship*

During each of the years relevant to this lawsuit, none of the Welders worked exclusively for Sunland. To work consistently throughout the construction season, which lasts six to nine months, the Welders moved from job to job, company to company, and state to state. Sunland hired the Welders on a project-by-project basis, but made an effort to move the Welders to subsequent projects. The duration of Sunland's construction projects averaged six weeks, but some projects lasted only a few days. The average number of weeks that each Welder worked per year for Sunland varied from approximately 3 weeks to 16 weeks.[1]

*b. Degree of control exercised by the alleged employer*

The parties agree that pipe welding requires specialized skills and that Sunland had no control over the manner or method of the pipe welding. Instead, Sunland's customers dictated the specific

---

[1]We approximated these averages from the record. The lead plaintiff in this lawsuit worked for Sunland approximately 20 weeks in 1987 and 8 weeks in 1988, an average of 14 weeks per year. Carrell worked approximately 188 hours of overtime in 1987 and 165 hours in 1988.

welding procedures and the type of welding rods required for each construction project. Before each project, the gas company customer, not Sunland, tested and certified each Welder. Sunland was prohibited from participating in the test's administration. Each Welder placed his identification number on each weld so that the gas companies could determine who was responsible for any improper welds. Either the gas company or Sunland could unilaterally remove a Welder.

While working for Sunland, the Welders performed only pipe-welding work. Sunland assigned the Welders to specific welding work and maintained daily time records for each Welder. Sunland, however, did not specify the amount of time that a Welder could spend on an assignment. Sunland required the Welders to work the same days and hours as the remainder of Sunland's crew, including taking the same daily break periods.

*c. Skill and initiative required*

Pipe welding, unlike other types of welding, requires specialized skills. That the gas companies tested and certified each Welder before a job demonstrates the specialized nature of the work. As for the initiative required, a Welder's success depended on his ability to find consistent work by moving from job to job and from company to company. But once on a job, a Welder's initiative was limited to decisions regarding his welding equipment and the details of his welding work.

*d. Relative investments of worker and alleged employer*

The Welders supplied their own trucks, welding machines that were mounted on the trucks, and various other specialized welding tools (e.g., grinders, cutting torches, welding leads, welding hoods, gloves). The Welders' investment in their welding machines, trucks, and tools averaged $15,000 per Welder. The Welders also assumed all costs associated with operating, repairing, and maintaining their welding equipment. The Welders provided their own lodging and meals on all Sunland projects, including the out-of-town projects. Sunland maintained a policy requiring the Welders to provide their own general liability and workers' compensation insurance, but Sunland rarely enforced that policy.

Although Sunland generally did not supply any essential equipment or welding tools to its

welders, it did supply blades for the grinders[2] and some equipment to assist in cutting, supporting, and clamping pipes. Sunland also owned a "tack rig" which the Welders utilized in areas where they could not physically utilize their own rigs (approximately 17 of the time). Sunland employed "welder helpers" to assist the Welders,[3] and occasionally provided the necessary pipe jacks and welding rods. We further recognize that Sunland's overall investment in each pipeline construction project was obviously significant.

*e. The degree to which the worker's opportunity for profit and loss is determined by the alleged employer*

Sunland did not solicit bids or proposals from the Welders. It paid the Welders a fixed hourly rate of $23, plus $10 per day for rental of their grinders. Sunland intended approximately 407 of the $23 hourly rate to compensate the Welders for supplying their own welding equipment. Sunland required the Welders to submit invoices for work performed on Sunland projects. On appeal, the Welders stress that Sunland exclusively controlled the Welders' compensation while they worked on a Sunland project: Sunland rarely deviated from its hourly rate and it controlled the number of hours that the Welders worked.

Sunland, however, explains that a Welder's year-end profits or losses as a welder depended on his ability to consistently find welding work with other companies and to minimize welding costs. Sunland refers us to the income tax returns filed by the lead plaintiff, Bennis Carrell. From 1987 to 1989, Carrell derived his welding income from companies that classified him as an employee as well as from companies, such as Sunland, that classified him as an independent contractor. For 1987, Carrell reported $31,923 in income for his contract welding work and deducted $26,273 for costs attributable to his contract work, leaving him with taxable profit of $5,650. For 1988, he reported contract income of $12,072 and deducted $11,659, leaving him with a net taxable profit of $413. For 1989, he reported $5,713 in contract income and deducted $12,094, leaving him with a net loss of $6,381. Like Carrell, many of the other Welders classified themselves as self-employed on their

---

[2]Welders use grinders to smooth the surface of the pipe before it is welded.

[3]The Welders often brought their own helpers, who appear to have been unskilled or semi-skilled laborers. Sunland classified and compensated these helpers as its employees.

income tax returns.

Sunland exerted some control over the Welders' opportunity for profits by fixing the hourly rate and the hours of work. Yet, the tax returns of Carrell indicate that the Welders' profits also depended on their ability to control their own costs. Moreover, the Welders worked for numerous companies in each of the years relevant to this dispute.

Our determination of employee status is very fact dependent. And, as with most employee-status cases, there are facts pointing in both directions. Several facts weigh in favor of employee status; for example, Sunland dictated the Welders' schedule, including the timing of their breaks; Sunland assigned the Welders to specific work crews; Sunland paid the Welders an hourly rate that was rarely negotiable; the Welders' compensation while working for Sunland depended on the hourly rate and number of hours worked, both of which Sunland controlled. Despite the facts indicative of an employment relationship, we are convinced that the Welders were independent contractors, not employees. In making our determination, we rely on the following: the Welders' relationship with Sunland was on a project-by-project basis; the Welders worked from job to job and from company to company; many of the Welders spent little time working for Sunland; the Welders worked while aware that Sunland classified them as independent contractors, and many of them classified themselves as self-employed;[4] the Welders were highly skilled; Sunland's customers, the gas companies, tested and certified each welder before each project; Sunland had no control over the methods or details of the welding work; when on a Sunland job, the Welders performed only welding services; the Welders supplied their own welding equipment; and their investments in welding equipment averaged $15,000 per Welder. The economic realities are consistent with Sunland's traditional practice of classifying its welders as independent contractors. The Welders are, as a matter of economic reality, in business for themselves.

This court has previously faced the issue of whether welders are employees under the FLSA. In *Robicheaux v. Radcliff Material, Inc.,* 697 F.2d 662 (5th Cir.1983), this court concluded that five

---

[4]The Welders' arrangement with Sunland is relevant, but not dispositive. *See Robicheaux v. Radcliff Material, Inc.,* 697 F.2d 662, 667 (5th Cir.1983) ("[T]he fact that the [workers] signed contracts stating that they were independent contractors, while relevant, is not dispositive.").

welders who worked for Radcliff Material, Inc. were employees, and thus entitled to overtime compensation. *Id.* at 667. But the *Robicheaux* court's determination of employee status was based on several significant facts that are absent from this case: the welders worked a substantial period of time exclusively with Radcliff Material, ranging from ten months to three years; the welding required only "moderate" skills; Radcliff Material told the welders how long a welding assignment should take; the welders spent only 507 of their time welding, and the remaining time cleaning and performing semi-skilled mechanical work; and Radcliff Material provided the welders with "steady reliable work over a substantial period of time." *Id.* A careful examination of *Robicheaux* reinforces our conclusion that the Welders in our case were independent contractors.

AFFIRMED.