# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 12, 2009

No. 09-60212
Summary Calendar

Charles R. Fulbruge III
Clerk

FRED CROMWELL; JEFF BANKSTON,

Plaintiffs-Appellants

v.

DRIFTWOOD ELECTRICAL CONTRACTORS, INC; AT&T
COMMUNICATIONS-EAST, INC; BELLSOUTH TELECOMMUNICATIONS
INC,

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
No. 1:07-cv-00996-hso-jmr

Before BENAVIDES, PRADO and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

The plaintiffs-appellants, Fred Cromwell and Jeff Bankston, filed this Fair Labor Standards Act ("FLSA") suit against defendants-appellees Driftwood Electrical Contractors, Inc., AT&T Communications, Inc., and BellSouth Telecommunications, Inc., alleging that they were not paid for overtime spent restoring damaged telecommunications lines along the Mississippi Gulf Coast

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

in the wake of Hurricane Katrina. The district court granted summary judgment against Cromwell and Bankston on the ground that they were independent contractors, not employees, and therefore exempt from the overtime provisions of the FLSA. Cromwell and Bankston appealed.

Cromwell and Bankston provided cable splicing services for Driftwood for approximately eleven months, and were required to work twelve-hour days, thirteen days on and one day off. They were paid a fixed hourly wage for their work. BellSouth was Driftwood's customer on the restoration project. AT&T appears to have had nothing to do with the facts of this case. Cromwell and Bankston reported to BellSouth's location every morning to receive their assignments, unless they had not completed their jobs from the prior workday, in which case they were permitted to check in by phone. Cromwell and Bankston were given prints describing the type of work that needed to be performed for each assignment and were instructed by BellSouth supervisors to follow certain general specifications. Driftwood and BellSouth representatives checked on the progress of work, but did not train Cromwell and Benson or control the details of how they performed their assigned jobs.

Cromwell and Bankston provided their own trucks, testing equipment, connection equipment, insulation equipment, and hand tools, totaling over $50,000 for Cromwell and approximately $16,000 for Bankston, while BellSouth supplied materials such as closures and cables. Cromwell and Bankston were responsible for their own vehicle liability insurance and employment taxes, but Driftwood provided workers' compensation insurance and liability insurance for Cromwell and Bankston's work.

To determine if a worker qualifies as an employee under the FLSA, we focus on whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself. *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008). To aid in that

inquiry, we consider five non-exhaustive factors: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. *Id.* No single factor is determinative. *Id.* The ultimate conclusion that an individual is an employee within the meaning of the FLSA is a legal, and not a factual, determination. *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1045 (5th Cir. 1987); *see also Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1327 & n.24 (5th Cir. 1985) (citing and reconciling cases). Therefore, "we review the determination that [plaintiffs] were not employees as we review any determination of law," which is de novo. *Donovan v. American Airlines, Inc.*, 686 F.2d 267, 270 n.4 (5th Cir. 1982). Because there are no disputes of material fact, we also conclude that the district court was correct to resolve the matter on summary judgment.

The defendants-appellees argue that the facts of this case are similar to those in *Carrell v. Sunland Const., Inc.*, in which we held that a group of welders were independent contractors under the FLSA. 998 F.2d 330 (5th Cir. 1993). In *Carrell*, we noted that several facts weighed in favor of employee status, including that the defendant dictated the welders' schedule, paid them a fixed hourly rate, and assigned them to specific work crews. *Id.* at 334. However, we held that the welders were independent contractors because the welders' relationship with the defendant was on a project-by-project basis; the welders worked from job to job and from company to company; the average number of weeks that each welder worked for the defendant each year was relatively low, ranging from three to sixteen weeks; the welders worked while aware that the defendant classified them as independent contractors, and many of them classified themselves as self-employed; the welders were highly skilled; the

defendant had no control over the methods or details of the welding work; the welders performed only welding services; the welders supplied their own welding equipment; and the welders' investments in their welding machines, trucks, and tools averaged $15,000 per welder. *Id.*

In *Carrell*, we distinguished our prior decision in *Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662 (5th Cir. 1983), in which we held that a group of welders were employees under the FLSA, on the grounds that the welders in *Robicheaux* worked a substantial period of time exclusively with the defendant in that case, ranging from ten months to three years; the welding in *Robicheaux* required only "moderate" skill; the defendant in *Robicheaux* told the welders how long a welding assignment should take; the welders in *Robicheaux* spent only fifty percent of their time welding, and the remaining time cleaning and performing semi-skilled mechanical work; and the defendant in *Robicheaux* provided the welders with "steady reliable work over a substantial period of time." *Carrell*, 998 F.2d at 334 (citing *Robicheaux*, 697 F.2d at 667). The welders in *Robicheaux* had signed a contract with the defendant in that case describing themselves as independent contractors; furnished their own welding equipment, in which they had invested from five to seven thousand dollars each; provided their own insurance and workers' compensation coverage; invoiced the defendant on their own business letterheads, filed federal income tax returns on IRS forms as self-employed individuals, and received a higher hourly wage than did other welders employed by the defendant who did not furnish their own equipment and who were considered by the company to be employees. *Robicheaux*, 697 F.2d at 665.

The facts of this case lie somewhere between those of *Carrell* and *Robicheaux*. Similar to the facts in *Carrell*, the plaintiffs in this suit are highly skilled and perform only services requiring the use of those skills, the defendants here did not control the details of how the plaintiffs performed their assigned

jobs, and the plaintiffs provided their own trucks, equipment, and tools, in which they had invested substantial sums. However, there are some significant dissimilarities between the facts in the instant case and the facts in *Carrell*, such that the facts of this case are not as readily distinguishable from those in *Robicheaux*. The plaintiffs in this case worked full-time exclusively for the defendants for approximately eleven months, within the time range that the *Robicheaux* welders had worked for the defendant in that case. The plaintiffs in this case did not have the same temporary, project-by-project, on-again-off-again relationship with their purported employers as the plaintiffs in *Carrell* did with their purported employer. The defendants-appellees argue that Cromwell and Bankston's work—restoring damaged telecommunications lines along the Mississippi Gulf Coast in the wake of Hurricane Katrina—was by nature temporary, but "courts must make allowances for those operational characteristics that are unique or intrinsic to the particular business or industry, and to the workers they employ." *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1054 (5th Cir. 1987) ("[W]hen an industry is seasonal, the proper test for determining permanency of the relationship is not whether the alleged employees returned from season to season, but whether the alleged employees worked for the entire operative period of a particular season."). Thus, the temporary nature of the emergency restoration work does not weigh against employee status.

It is common in FLSA cases that "there are facts pointing in both directions" regarding the issue of employee status, *see Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 305 (1998) (quoting *Carrell*, 998 F.2d at 334), but the facts in this case truly appear to be nearly in equipoise. However, on balance, we believe that, as a matter of economic reality, Cromwell and Bankston were economically dependant upon Driftwood and BellSouth, and were not in business for themselves. The facts of this case simply appear closer

to those in *Robicheaux* than in *Carrell*. The most significant difference between the facts in those cases, in terms of the economic reality of whether the plaintiffs were economically dependant upon the alleged employer, was that the *Robicheaux* welders worked on a steady and reliable basis over a substantial period of time exclusively with the defendant, ranging from ten months to three years, whereas the *Carrell* welders had a project-by-project, on-again-off-again relationship with the defendant, with the average number of weeks that each welder worked for the defendant each year being relatively low, ranging from three to sixteen weeks. Similar to the *Robicheaux* welders, Cromwell and Bankston worked on a steady and reliable basis over a substantial period of time—approximately eleven months—exclusively for their purported employers. The permanency and extent of this relationship, coupled with Driftwood and BellSouth's complete control over Cromwell and Bankston's schedule and pay, had the effect of severely limiting any opportunity for profit or loss by Cromwell and Bankston. Although it does not appear that Cromwell and Bankston were actually prohibited from taking other jobs while working for Driftwood and BellSouth, as a practical matter the work schedule establish by Driftwood and BellSouth precluded significant extra work. Also, the fact that Driftwood and BellSouth provided Cromwell and Bankston with their work assignments limited the need for Cromwell and Bankston to demonstrate initiative in performing their jobs. *See Carrell*, 998 F.2d at 333 ("As for the initiative required, a Welder's success depended on his ability to find consistent work by moving from job to job and from company to company. But once on a job, a Welder's initiative was limited to decisions regarding his welding equipment and the details of his welding work."). Although there are facts that clearly weigh in favor of independent contractor status, notably that Cromwell and Bankston controlled the details of how they performed their work, were not closely supervised,

invested a relatively substantial amount in their trucks, equipment, and tools,[1] and used a high level of skill in performing their work, these facts are not sufficient to establish, as a matter of economic reality, that Cromwell and Bankston were in business for themselves during the relevant time period. The judgment of the district court is VACATED, and this case is REMANDED to the district court for proceedings consistent with this opinion.

---

[1] Cromwell and Bankston argue that, under Fifth Circuit law, the value of their tools and equipment should be ignored in assessing whether they were employees or independent contractors when they performed the Katrina repair work at issue in this case because the tools and equipment were purchased for prior cable-splicing jobs. However, the case cited by Cromwell and Bankston stands for the proposition that equipment initially purchased for personal use but later used for work should not be considered a work investment, not that work-related investments may only be considered investments for the specific job for which they were purchased and not for subsequent jobs in which they are used. *See Brock*, 814 F.2d at 1051 ("One operator testified that he used a computer to assist him while working at the stand, but this involved no investment because he originally had purchased the home computer for school work."); *see also Herman*, 161 F.3d at 304 ("Although the driver's investment of a vehicle is no small matter, that investment is somewhat diluted when one considers that the vehicle is also used by most drivers for personal purposes."). Cromwell and Bankston's tools and equipment are appropriately considered to be investments in this case.