# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 28, 2024

Lyle W. Cayce
Clerk

No. 23-20295

_____

Guillermo Gray,

*Plaintiff—Appellant*,

*versus*

Killick Group, L.L.C.,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-1673

_____

Before Southwick, Haynes, and Graves, *Circuit Judges*.

Leslie H. Southwick: *Circuit Judge*:

The plaintiff brought suit against his ostensible employer for wages and overtime pay under the Fair Labor Standards Act. The district court granted summary judgment to the defendant. The court held that the plaintiff was judicially estopped from claiming employee status under the Fair Labor Standards Act based on his previously sworn assertion before a criminal court that he was self-employed.

We AFFIRM.

No. 23-20295

FACTUAL AND PROCEDURAL BACKGROUND

The defendant Killick Group, L.L.C. provides inspection services to customers in the oil, gas, and energy industries. Once a need for an inspection arises, customers will provide the specifications of their equipment and/or materials and the qualification requirements for an inspector to Killick on a "project-by-project basis." Killick finds the appropriate third-party inspector to meet the needs of the customer. If the inspector confirms a willingness to work on a project, Killick then proposes the inspector to the customer. If the customer selects Killick's inspector and the inspector accepts the assignment, the inspector then performs the inspection and prepares a report of findings.

The plaintiff Guillermo Gray has many years' experience in the oil and gas industry and is a certified welding and coding inspector. In 2013, Gray founded Veritas Inspectors, Inc. That same year, Gray began performing inspection services for Killick on a project-by-project basis. While working on customer projects for Killick, Gray would use his own laptop, cellphone, and vehicle to travel to inspection sites. Gray never worked from the Killick office or used Killick's equipment. To receive payment for a completed project, Gray would submit to Killick an invoice using the business name "Veritas Inspectors."

In November 2015, the State of Texas convicted Gray for driving while intoxicated. That caused the suspension of his driver's license. Gray then applied for an essential-need license from the Harris County Criminal Court based on his need to use a vehicle to continue his inspection services. On his application, Gray stated "he [was] currently self-employed as a Welding Inspector, primarily in the oil and gas industry" and "he ha[d] no one to depend on but himself to transport him in this employment." Further, on his case information sheet, Gray said his employer was "Veritas

2

Inspections." Once the criminal court approved his application, Gray continued to provide services for Killick and other entities.

In 2017, Killick encouraged its inspectors to obtain the API 1169 Certification to serve customers better and acquire more project opportunities. According to Gray, Killick required its inspectors to pay the cost of that Certification. In August 2018, Gray asked John Lawlor, Killick's president, if he would split the cost. Lawlor stated he would consider paying "some portion [or] sharing of the cost." Killick, however, never paid or reimbursed Gray for the certification. In March 2020, during the rise of COVID-19, Gray stopped accepting projects from Killick.

In April 2021, Gray sued Killick and Lawlor in state court in Harris County, Texas. Gray alleged the defendants violated the Texas Labor Code and the Fair Labor Standards Act ("FLSA") when they refused to pay Gray wages and overtime. Gray also alleged breach of contract and quantum meruit claims.

The defendants removed the lawsuit to the United States District Court for the Southern District of Texas. The court granted the defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) on Gray's Texas Labor Code claim. The district court later dismissed Lawlor from the suit. After extensive discovery, Killick moved for summary judgment on Gray's FLSA, breach of contract, and quantum meruit claims. Killick argued judicial estoppel barred Gray's FLSA claim because Gray admitted in his sworn occupational license application that he was "self-employed." Because the criminal court allegedly relied on Gray's self-employed statement, Killick asserted Gray could not establish he was a Killick employee as a matter of law. In addition to judicial estoppel, Killick argued Gray could not establish an employer-employee relationship under the economic-realities test. Finally, Killick contended there were no genuine

disputes as to any material fact on Gray's breach of contract and quantum meruit claims and they failed as a matter of law.

The district court granted Killick's motion for summary judgment. Regarding the FLSA claim, the court relied on judicial estoppel to bar Gray from claiming an employer-employee relationship needed for his *prima facie* FLSA claim. The court also held Gray's breach of contract and quantum meruit claims failed. Gray timely appealed. He seeks reversal only on the FLSA claim, and that is the only one we consider.

## DISCUSSION

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "While a grant of summary judgment is generally reviewed *de novo*, we review the use of judicial estoppel only for abuse of discretion." *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 346 (5th Cir. 2008). "[A]n abuse of discretion standard does not mean a mistake of law is beyond appellate correction, because [a] district court by definition abuses its discretion when it makes an error of law." *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999) (alterations in original) (quotation marks and citation omitted). "Accordingly, [t]he abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Id.* (alteration in original) (quotation marks and citation omitted).

The district court determined judicial estoppel on the FLSA claim was appropriate because Gray's self-employed statement on his occupational license application is clearly "inconsistent with his current legal position that he was an employee of Killick." The court also explained that Gray convinced the criminal court to accept his self-employed position, "as evidenced by [the criminal court] granting [Gray's] application."

4

No. 23-20295

We conclude there is some doubt about the application of judicial estoppel here. Judicial estoppel requires both that the earlier position taken by a party is clearly inconsistent with the one taken in the current litigation, and that the earlier court accepted the prior position.[1] *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003). Gray raises a number of arguments about the supposed inapplicability of judicial estoppel. We need not consider them because we can resolve this appeal by evaluating whether Killick even violated the FLSA. We have authority to base our decision on that separate issue because we "may affirm the district court's grant of summary judgment on any ground supported by the record and presented to the district court." *Mahmoud v. De Moss Owners Ass'n*, 865 F.3d 322, 328 (5th Cir. 2017).

Killick argued in its motion for summary judgment that Gray cannot meet his burden to establish an employer-employee relationship. To demonstrate a *prima facie* FLSA case, a worker must prove: "(1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due." *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019) (citation omitted). The FLSA broadly recognizes "any individual employed by an employer" as an "employee." *Id.* at 378 (quoting 29 U.S.C. § 203(e)(1)).

On appeal, Killick contends Gray was not an employee but instead an independent contractor under this circuit's economic-realities test. "To

---

[1] "[M]any courts have imposed the additional requirement that the party to be estopped must have acted intentionally, *not* inadvertently." *In re Coastal Plains*, 179 F.3d at 206 (emphasis in original); *see, e.g.*, *Johnson Serv. Co. v. Transamerica Ins.*, 485 F.2d 164, 175 (5th Cir. 1973). The district court found Gray "did not act inadvertently because he signed the Application under oath, affirming that all representations in his Application were true and correct." Gray does not challenge this finding, and we do not address it.

determine if a worker qualifies as an employee, we focus on whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself." *Hopkins*, 545 F.3d at 343. Five non-exhaustive factors are considered:

> (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship.

*Id.* "No single factor is determinative. Rather, each factor is a tool used to gauge the *economic dependence* of the alleged employee, and each must be applied with this ultimate concept in mind." *Id.* (emphasis in original) (citation omitted).

As to the first factor, Killick emphasizes the uncontested fact that Gray formed his own company — Veritas Inspections — and marketed his company's services to the public. Gray's efforts proved successful as he obtained work and performed services for other entities in addition to Killick during 2019 and 2020.

Killick also describes the nature of Gray's work. Gray worked for Killick on a project-by-project basis and possessed the freedom to accept or reject projects without retaliation. When he accepted a project for Killick, Gray performed his work independently and without supervision. During the commission of a project, Gray used his own vehicle, laptop, and cellphone. After completing a project, Gray would prepare an invoice to Killick for payment, which he submitted under the name "Veritas Inspectors."

We conclude this first factor supports Gray's independent contractor status because he controlled "a meaningful part of the business" and "has a

viable economic status that can be traded to other . . . companies." *Parrish*, 917 F.3d at 381 (alteration in original) (citations omitted).

As to the second factor, "we compare each worker's *individual* investment to that of the alleged employer." *Hopkins*, 545 F.3d at 344 (emphasis in original). Gray invested his own time and money into industry-specific certifications and exams. There is no indication in the record that Killick paid or compensated Gray for any of these certifications or exams. Gray also supplied his own vehicle, machinery, and other supplies to perform his work projects, which were listed as deductions on his 2019 and 2020 tax returns.

Before the district court, Gray argued Killick's overall investment in its business outweighs Gray's individual investment. According to Gray, this is evidenced by Killick compensating Gray for a rental car and giving him a *per diem* when he traveled out of town, employing several SQS coordinators,[2] and maintaining numerous offices in multiple countries. We find this case similar to one in which the workers provided their own vehicles, machinery, and tools while the alleged employer provided "some equipment" and employed individuals to help the workers perform their services. *Carrell v. Sunland Constr., Inc.*, 998 F.2d 330, 333 (5th Cir. 1993). Though we recognized that the alleged employer's overall investment "was obviously significant," we classified the workers as independent contractors in part because they supplied their own costly equipment. *Id.* at 333–34. Based on these analogous facts, we conclude this second factor weighs slightly in favor of independent contractor status because Gray paid for his own certifications and exams and used his own vehicle and various supplies.

---

[2] Gray explained in his deposition that SQS coordinators would "interface with the customers," "contact suppliers," and "maybe set up inspection dates and time."

As to the third factor, we examine "the degree to which the worker's opportunity for profit or loss is determined by the alleged employer." *Parrish*, 917 F.3d at 384 (citation omitted). In this consideration, "it is important to determine how the worker['s] profits [depend] on [his] ability to control [his] own costs." *Id.* (second alteration in original) (quotation marks and citation omitted). Killick argues that "because Gray had extensive autonomy to make decisions that affected his ability to be profitable," this factor favors independent contractor status. We agree. Gray had the ability to negotiate the hourly pay rates for his services on Killick projects and managed his own business expenses.

Though Killick set parameters surrounding the hours and mileage Gray could expend on a project, this is not determinative of employee status. Even if an alleged employer "exerted some control over the [worker's] opportunity for profits by fixing the hourly rate and the hours of work," a worker may still be considered an independent contractor. *Carrell*, 998 F.3d at 334. Gray's tax returns indicate his "profits . . . depended on [his] ability to control [his] own costs." *Id.* On his 2019 tax returns, Gray's sole proprietorship showed a gross income of $75,155, which resulted in $27,735 in net profits after accounting for $47,420 in expenses. The expenses included deductions for his car and truck, supplies, travel and meals, and utilities. Likewise, his 2020 tax returns demonstrate his sole proprietorship generated a gross income of $57,965, which resulted in $29,075 in net profits after deducting $28,890 in expenses. These tax returns are significant evidence that Gray was not reporting salary or wages but business income with an ability to control his expenses.

Moreover, Gray would not receive payment from Killick unless he accepted and completed projects for Killick. The more projects he accepted from Killick, the more money Gray would make. Further, Gray never signed a non-compete agreement for Killick; he had the freedom to accept projects

for other companies and did so on at least one occasion. Based on the foregoing, we conclude this third factor favors independent contract status.

As to the fourth factor, we consider "the skill and initiative required in performing the job." *Parrish*, 917 F.3d at 385 (citation omitted). "As a part of this inquiry, whether [workers] have some unique skill set, or some ability to exercise significant initiative within the business is, for obvious reasons, evaluated." *Id.* (quotation marks and citation omitted). Importantly, "[g]reater skill and more demonstrated initiative counsel in favor of [independent contractor] status." *Id.* As we have previously discussed, Gray is a well-credentialed and proficient inspector and has successfully completed numerous welding certifications and exams. Gray argued before the district court that Killick required him to obtain certain certifications to secure Gray's work for Killick. That is not what the evidence showed. Instead, Killick encouraged these certifications. Killick specifically told Gray the API 1169 Certification "is worth looking into" and explained how it could benefit his career. Indeed, there is no indication Killick required or forced Gray to obtain this or any certification as a job prerequisite.

Concerning initiative, Killick emphasizes that Gray formed and marketed his business, obtained industry-specific certifications, worked on a project-by-project basis, was responsible for his own supplies, and worked for other inspection companies. Though Gray's alleged initiative alone may not compel independent contractor status, when these considerations are "viewed by the totality of the circumstances," Gray's "specialized skill weighs heavily in our analysis and persuades us to hold this factor leans in favor of [independent contractor] status." *Id.* at 386.

The fifth and final factor is the permanency of the relationship. There, numerous considerations apply such as "whether [Gray] worked exclusively for" Killick, "the total length of the relationship between" the two parties,

and "whether the work was on a project-by-project basis." *Id.* at 387 (quotation marks and citations omitted). Gray indisputably worked for Killick on a project-by-project basis. "This counsels heavily in favor of [independent contractor] status." *Id.* Moreover, during the period Gray worked for Killick, he worked for at least one other company.

We recognize that Gray worked for Killick from 2013 to 2020, nearly seven years. "The inferences gained from the length of time of the relationship depend on the surrounding circumstances." *Id.* Though this fact supports employee status, the project-by-project nature of Gray's work and Gray's decision to work for at least one other company convinces us otherwise. Further, Gray's "valuable skillset shows how the permanency of the relationship may, in reality, be not all that permanent." *Id.* This last factor also supports independent contractor status.

In summary, our *de novo* survey of these five factors convinces us that Gray was not an employee of Killick. We conclude Gray is an independent contractor outside the purview of the FLSA.

AFFIRMED.