# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 22, 2024

Lyle W. Cayce
Clerk

———————————

No. 22-30547

———————————

STACEY BADON, *on behalf of herself and all those similarly situated*; ALTRAVESE GARDNER; BERNETTE KINARD; CHANELL K. WILSON; DEBORAH ANN CARSON; DEREINISHA N. JOHNSON; DIANE JONES; GLORIA WILLIAMS; HELEN HUDSON; KWANE HARRIS; RACHEL WILLIAMS; SHENA DAY; SHENEATHA BAPTISTE; TINEKA BENN; TREONDA IRVIN; FRANCIS F. PAZ PESSOA; FRANCINE VEAL DIXON; MARY MORGAN; RENA LYONS; TERRY WATSON; CHANDONAIS BANKS,

*Plaintiffs—Appellees*,

*versus*

BERRY'S RELIABLE RESOURCES, L.L.C.; RHONDA WILLIAMS,

*Defendants—Appellants*,

———————————————————————————

ANTHONY BADON,

*Plaintiff—Appellee*,

*versus*

BERRY'S RELIABLE RESOURCES, L.L.C.; RHONDA WILLIAMS,

*Defendants—Appellants*,

———————————————————————————

FRANCINE DIXON, *on behalf of herself and all those similarly situated*,

*Plaintiff—Appellee*,

*versus*

BERRY'S RELIABLE RESOURCES, L.L.C.; RHONDA WILLIAMS;
TYESE BERRY; RAEON WILLIAMS,

*Defendants—Appellants*.

_____

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC Nos. 2:19-CV-12317, 2:20-CV-584,
2:21-CV-596

_____

Before RICHMAN, HAYNES, and DUNCAN, *Circuit Judges*.

PER CURIAM:[*]

This case involves a wage dispute between Berry's Reliable Resources, L.L.C. and former personal care workers who provided services in the Greater New Orleans area. The workers brought claims under federal and Louisiana law for unpaid wages. Prior to trial, the district court certified one of the claims as a collective action and determined, on summary judgment, that the workers were employees of the company. The jury awarded the workers unpaid wages. On appeal, the company raises a variety of constitutional, statutory, and evidentiary challenges. For the reasons set forth below, we affirm.

_____

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 22-30547

## I

Berry's Reliable Resources, L.L.C. (BRR) is a provider of personal care services in the Greater New Orleans area.  The company contracts with the State of Louisiana to provide members of the community at-home support—assisting individuals with disabilities and the elderly with a variety of personal needs.  Services include housekeeping, handling medications, preparing food, helping clients with bathing, and taking clients to medical appointments.  BRR provides these services to clients through a network of Direct Service Workers (DSWs), who follow a client-specific plan of care provided by the Louisiana Department of Health.

Each DSW contracts with BRR to provide personal care services to clients.  The contract sets out the hourly wage, duration of service, and duties and training requirements associated with the service.  The DSWs do not contract with or receive payments from the State of Louisiana.  Instead, BRR fully supervises the workers.  The company collects the workers' timesheets, sets the workers' rates of pay, and pays the workers through direct deposit.  BRR is then reimbursed by the Louisiana Department of Health for the services it provides.

This case involves a dispute over unpaid wages and arises from three actions commenced by former DSWs.  First, Stacey Badon filed a collective action claim against BRR in 2019.  She alleged that the company failed to pay her and similarly situated DSWs overtime wages in violation of the Fair Labor Standards Act (FLSA).  The district court conditionally certified her collective action in September 2020.  It denied BRR's motion for decertification in March 2021.  Next, Anthony Badon filed an individual claim in 2020 alleging that he was entitled to unpaid overtime wages pursuant to the FLSA and unpaid final wages in accordance with the Louisiana Wage Payment Act (LWPA).  He further asserted an individual claim for

retaliatory termination under the FLSA. Finally, in 2021, Francine Dixon filed a claim for unpaid wages under the FLSA, which was amended to allow Altravese Gardner, Treonda Irvin, Dereinisha Johnson, Rena Lyons, Francis Pessoa, and Gloria Williams to join as plaintiffs. Francine Dixon also asserted an individual claim for retaliatory termination. The district court consolidated these three cases for purposes of trial.

The central question underlying the claims is whether the DSWs were employees or independent contractors. Prior to trial, the district court determined that the workers were employees covered under the FLSA and the LWPA. At trial, the jury found in favor of the DSWs on all claims but one—the jury did not find that the evidence supported Anthony Badon's individual claim for retaliatory termination. BRR timely appealed.[1]

## II

BRR asserts a variety of constitutional, statutory, and evidentiary challenges to the pretrial orders of the district court and the verdicts awarded by the jury. Under the FLSA, the company challenges the district court's certification of Stacey Badon's collective action and the determination that the DSWs were employees. It further contends that the DSWs were not covered by the FLSA because the company did not engage in interstate commerce. Before reviewing these challenges, we address the company's more peripheral claims.

First, the company contends that the FLSA's statute of limitations bars Stacey Badon's action. While violations of the FLSA are ordinarily subject to a two-year statute of limitations,[2] the time is extended to three

---

[1] FED. R. APP. P. 4(a)(1)(A).

[2] 29 U.S.C. § 255(a).

years when the defendant's conduct is "willful."[3]  Here, Stacey Badon filed her action within three years of her employment end date, and the jury concluded that BRR willfully engaged in misconduct.  Accordingly, the statute of limitations did not bar her claim.

Second, BRR asserts that the district court abused its discretion when denying the company's motion to compel Stacey Badon's tax returns.  It argues that the tax returns were relevant to whether she was an employee or independent contractor.  We disagree.  The district court "is afforded broad discretion when deciding discovery matters,"[4] and on appeal the company fails to show how the district court abused that discretion.  Under our caselaw, it is the economic realities of the contested relationship that underpins the employment-status question,[5] not whether the workers had other sources of income.[6]  While tax returns may be relevant for other purposes in wage disputes,[7] the district court did not abuse its "broad discretion" in this case.[8]

---

[3] *Id.*  Under our caselaw, whether the employer's conduct was "willful" is a factual conclusion. *See Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1042-43 (5th Cir. 2010) (labeling district court's finding of willful violation of FLSA as a finding of fact).

[4] *Crosby v. La. Health Serv. and Indem. Co.*, 647 F.3d 258, 261 (5th Cir. 2011) (noting the court "abuses its discretion when its decision is based on an erroneous view of the law").

[5] *See Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019).

[6] *See Halferty v. Pulse Drug Co., Inc.*, 821 F.2d 261, 267-68 (5th Cir. 1987) (noting that "the [economic] dependence at issue is dependence on that job for that income . . .").

[7] *See Parrish*, 917 F.3d at 388 (observing that tax returns may be relevant for other purposes such as determining profits and losses).

[8] *Crosby*, 647 F.3d at 261.

No. 22-30547

Third, the company argues that the district court abused its discretion in excluding certain witness testimony from trial.[9] It maintains that the testimony of Wanda Rodney-Warner and Terry Cooper—representatives of the Louisiana Department of Health—was relevant to the employment-status question. The company contends that the state agency permitted the use of independent contractors. But such evidence does not facilitate the employment-status inquiry. The "touchstone" of that inquiry is "an assessment of the 'economic dependence' of the putative employees."[10] "[F]acile labels and subjective factors are only relevant to the extent that they mirror 'economic reality.'"[11] The district court did not abuse its discretion when determining that the "labels" assigned by the Louisiana of Department of Health were irrelevant to the DSWs' employment status.[12]

Finally, the company takes issue with the jury's verdicts and makes broad proclamations about violations of its constitutional rights. Such arguments are unfounded. As explained below, the determination that the DSWs are employees is a legal conclusion.[13] The jury—a finder of facts—was correctly empowered to weigh conflicting evidence as to the remaining factual issues in the case.[14] Accordingly, we turn to the company's challenges under the FLSA.

---

[9] Abuse of discretion is the proper standard of review of a district court's evidentiary rulings. *See, e.g.*, *Old Chief v. United States*, 519 U.S. 172, 174 n.1 (1997); *United States v. Pace*, 10 F.3d 1106, 1115 (5th Cir. 1993).

[10] *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1043-44 (5th Cir. 1987).

[11] *Id.* at 1044.

[12] *Id.*

[13] *See infra* Part IV.

[14] *See, e.g.*, *Boeing Co. v. Shipman*, 411 F.2d 365, 375 (5th Cir. 1969) (en banc) ("[I]t is the function of the jury as the traditional finder of facts, and not the Court, to weigh

No. 22-30547

## III

The Fair Labor Standards Act of 1938 created "a comprehensive federal wage-and-hour scheme" to protect workers from substandard wages and oppressive working hours.[15] The Act provides covered employees a private right of action against their employers for unpaid wages.[16] It ensures that they receive a "fair day's pay for a fair day's work."[17] Section 216(b) of the Act permits employees to vindicate their rights together, as a collective action, so long as they are "similarly situated."[18] In doing so, the provision allows covered employees to lower litigation costs by pooling litigation resources.[19]

For decades, courts struggled to distill the exact procedures required by Section 216(b) when certifying collective actions.[20] Two approaches emerged: the class action approach outlined in *Shushan v. University of Colorado*[21] and the two-step rubric espoused in *Lusardi v. Xerox*.[22] The latter is at issue here.

_____

conflicting evidence and inferences, and determine the credibility of witnesses"), *overruled on other grounds by Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997) (en banc).

[15] *Aldridge v. Miss. Dep't of Corr.*, 990 F.3d 868, 871 (5th Cir. 2021) (quoting *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 605 (2019)).

[16] *Id.* at 872.

[17] *Id.* (quoting *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981)).

[18] 29 U.S.C. § 216(b).

[19] *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

[20] *See Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 436-37 (5th Cir. 2021) (discussing the various approaches used by district courts).

[21] 132 F.R.D. 263 (D.Colo. 1990).

[22] 118 F.R.D. 351 (D.N.J. 1987).

No. 22-30547

Under the *Lusardi* two-step approach, the district court first examines the plaintiff's allegations in the pleadings and determines whether there are other workers "similarly situated" to the plaintiff.[23] If so, the FLSA claim is conditionally certified as a collective action.[24] The second step "typically begins when the [defendant] moves to decertify the collective, which usually occurs after discovery is complete."[25] The district court re-examines the certification question, considering the more developed evidence revealed from discovery.[26] If the district court makes a final determination that the workers are "similarly situated," the case proceeds as a collective action.[27]

At the time Stacey Badon filed her collective action claim, our court permitted, but did not explicitly endorse, the two-step *Lusardi* approach.[28] The district court applied *Lusardi*'s first step—conditionally certifying the collective action. However, before the district court applied *Lusardi*'s second step, our court decided *Swales v. KLLM Transport Services*.[29] There, we unequivocally rejected *Lusardi*'s two-step approach.[30] We reasoned that *Lusardi* was "amorphous"[31] and "ha[d] no anchor in the FLSA's text or in

---

[23] *In re JPMorgan Chase & Co.*, 916 F.3d 494, 500-01 (5th Cir. 2019).

[24] *Id.*

[25] *See Reyna v. Int'l Bank of Com.*, 839 F.3d 373, 375 n.2 (5th Cir. 2016).

[26] *Id.*

[27] *Id.*

[28] *See Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 434 (5th Cir. 2021); *see also Xavier v. Belfor USA Grp., Inc.*, 585 F. Supp. 2d 873, 876 (E.D. La. 2008) (describing the *Lusardi* approach as the "preferred method"); *Lang v. DirecTV, Inc.*, No. 10-1085, 2011 WL 6934607, at *7 (E.D. La. Dec. 30, 2011) (noting that the *Lusardi* approach is the "more common" approach and is routinely used in the Eastern District of Louisiana).

[29] 985 F.3d 430 (5th Cir. 2021).

[30] *Id.* at 434.

[31] *Id.* at 440.

Supreme Court precedent interpreting it."[32] Shortly thereafter, BRR moved to decertify Stacey Badon's collective action. The district court denied the motion and the certified collective went to trial.

On appeal, the company argues that the district court failed to "rigorously enforce"[33] the requirements announced in *Swales*. The company contends that the DSWs are not similarly situated and that the district court improperly certified the collective action.[34] We first review de novo whether the district court applied the correct legal standard developed in *Swales*.[35] We then review whether the district court abused its discretion when certifying the collective action.[36]

## A

Under *Swales*, the district court, at the outset of the case, must identify the facts and legal considerations "material to determining whether a group of 'employees' is 'similarly situated.'"[37] Then, after appropriate discovery, the trial judge must decide whether the evidence supports finding the workers to be similarly situated.[38] In doing so, the district court must determine whether the "merits questions" of the case "can be answered

---

[32] *Id*. at 434.

[33] *Swales*, 985 F.3d at 443.

[34] BRR's Br. at 17-21.

[35] *See Loy v. Rehab Synergies, L.L.C.*, 71 F.4th 329, 335 (5th Cir. 2023).

[36] *Id*.

[37] *Swales*, 985 F.3d at 441.

[38] *See id*. at 442-43.

collectively."[39]  Only then is the case allowed to proceed as a collective action.[40]

BRR contends that the district court deviated from our decision in *Swales*. We disagree. The district court considered and applied the standards announced in *Swales* when evaluating the company's motion for decertification. The court specifically assessed "whether the individuals in the collective action are 'similarly situated' such that they may be collectively determined to be employees or independent contractors." Put differently, the court evaluated whether the "merits question"—the employment status of the DSWs—could be answered on a collective basis, just as *Swales* demands. Accordingly, BRR has not demonstrated that the district court applied the wrong legal standard when considering the company's motion for decertification.

## B

BRR next asserts that even if the district court applied the correct legal standard, the court improperly certified the collective action. The company argues that the collective action should be decertified on appeal because the DSWs failed to provide evidence showing that they were similarly situated. We review for abuse of discretion whether the district court properly certified the collective action when determining the DSWs to be similarly situated.[41]

"A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the

---

[39] *Id*. at 442.

[40] *Id*. at 443.

[41] *Loy v. Rehab Synergies, L.L.C.*, 71 F.4th 329, 335 (5th Cir. 2023).

evidence."[42]  As we explained in *Swales*, a collective action cannot "devolve into a cacophony of individual actions."[43]  Therefore, if the district court engages in a highly individualized inquiry into each workers circumstances, the workers are likely not similarly situated and collective action certification is inappropriate.[44]  Here, the district court analyzed the evidence holistically. It considered affidavits and testimony indicating that the factual and employment settings for the DSWs were similar.  The court also evaluated the single defense offered by BRR—that the DSWs were independent contractors—and concluded that the employment-status question could be answered collectively.

The employment circumstances discussed in *Swales* are distinguishable from the case at hand.  In *Swales*, we observed that there were "numerous variations" among the KLLM workers.[45]  Some workers leased equipment from the company and others purchased the equipment from third parties.[46]  Some workers hired their own employees; others performed the work themselves.[47]  From this, we concluded that the district court may determine that the KLLM workers were "too diverse a group to be 'similarly situated.'"[48]

---

[42] *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005) (quoting *Kennedy v. Tex. Utils.*, 179 F.3d 258, 265 (5th Cir. 1999)).

[43] 985 F.3d at 442.

[44] *Id.*; *Loy*, 71 F.4th at 336.

[45] *Swales*, 985 F.3d at 442.

[46] *Id.*

[47] *Id.*

[48] *Id.* at 443.

The same cannot be said for the DSWs. The workers have diverse clients, not diverse contractual relationships with the company. BRR collects the workers' timesheets, sets the workers' rates of pay, and pays the workers through direct deposit. In fact, the DSWs' contracts contain the exact same provisions. The only material difference among the DSWs is the clients they serve.[49] Accordingly, the district court did not abuse its discretion when finding the workers to be similarly situated. The district court properly certified the collective action.

## IV

Next, BRR contends that the district court improperly determined the DSWs to be employees covered by the FLSA. BRR asserts that the DSWs are independent contractors, and therefore have no cause of action under the Act. The company further maintains that the workers cannot seek redress under the FLSA because BRR is not engaged in interstate commerce. The district court disagreed on both issues. The court determined—on cross-motions for summary judgment—that the workers were employees of the company. It also denied BRR's motion for summary judgment as to the interstate-commerce defense because the company falls within the scope of 29 U.S.C. § 207(a)(1)'s enterprise coverage provision. Our court "reviews a grant or denial of summary judgment de novo, and applies the same standard as the district court."[50]

_____

[49] *Cf. Swales*, 985 F.3d at 442 (describing the numerous variations among workers).

[50] *See McGavock v. City of Water Valley*, 452 F.3d 423, 424 (5th Cir. 2006).

No. 22-30547

## A

Before reaching the merits of BRR's claim, the company argues that the DSWs' employment status was a question of fact for the jury.[51] We disagree. Our court has recognized repeatedly that "whether a worker is an employee for FLSA purposes is a question of law."[52] Although this inquiry is very fact dependent,[53] "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material* fact."[54] Here, there is no fact that is both genuinely disputed and material. Both parties agree that the DSWs contracted with the company and worked according to a client-specific plan of care provided by the Louisiana Department of Health. Accordingly, the district court properly considered the question of law: whether the DSWs were employees of the company.

When determining the employment status of workers under the FLSA, "the pertinent question is 'whether the alleged employees, as a matter of economic reality, are economically dependent on the business to which they supply their labor and services,'"[55] or are "in business for themselves."[56] To answer that question, courts consider "five non-

---

[51] The reply brief is the first time BRR explicitly argues that the employment-status question was a factual question for the jury. While issues raised for the first time in a reply brief are waived, it is unclear from BRR's original brief whether this was the company's contention later clarified by the reply brief. Regardless, the claim is meritless and can be quickly dismissed.

[52] *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 377 (5th Cir. 2019) (citing *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1045 (5th Cir. 1987)).

[53] *See id.* at 379.

[54] *Id.* at 378 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

[55] *Parrish*, 917 F.3d at 379 (quoting *Brock*, 814 F.2d at 1043).

[56] *Carrell v. Sunland Const., Inc.*, 998 F.2d 330, 334 (5th Cir. 1993).

exhaustive factors"[57] originally announced in *United States v. Silk*.[58]  Those factors include: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship.[59]

BRR contends that the district court misapplied those factors, and as a result, incorrectly found the DSWs to be employees under the FLSA. Because we "review *de novo* [the] district court's legal conclusion as to employment status in a grant of summary judgment,"[60] we turn to the application of the five *Silk* factors.  Our task is to determine whether the DSWs are, as a matter of economic reality, in business for themselves.[61]

**1**

We first consider the degree of control exercised by BRR over the DSWs.[62]  In determining that the company controlled the DSWs' work, the district court focused on the supervisory role of the company, the workers' dependence on the company for payment, and contractual provisions preventing the workers from altering the "type, scope or duration" of the services they provided.  We agree with the district court.  These uncontested facts are sufficient to find that BRR meaningfully controlled the DSWs.  The

---

[57] *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008).

[58] 331 U.S. 704 (1947), *abrogated on other grounds by Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992).

[59] *Id*. at 716; *Parrish*, 917 F.3d at 379.

[60] *Hopkins*, 545 F.3d at 343 (citing *Carrell*, 998 F.2d at 332).

[61] *See, e.g., Donovan v. Tehco, Inc.*, 642 F.2d 141, 143 (5th Cir. Unit A Apr. 1981).

[62] *See Hopkins*, 545 F.3d at 343.

company itself admits that it supervised the workers and the DSWs' contracts reveal that BRR required them to meet the same obligations as if they were part of the company's staff. Accordingly, BRR and the DSWs cannot be considered "separate economic entit[ies]."[63] The control factor strongly favors the DSWs' employee status.

**2**

Next, we examine "the extent of the relative investments of the worker and the alleged employer."[64] The district court considered this factor neutral, or slightly favoring the DSWs, because it was unclear the extent to which the workers supplied their own equipment or materials. We reach the same conclusion. Other than time sheets provided by BRR to the DSWs, the evidence provides little insight into the relative investments of the company and the workers.

**3**

The third factor is "the degree to which the worker's opportunity for profit or loss is determined by the alleged employer."[65] BRR maintains that the DSWs could simultaneously work for BRR and other providers, increasing their profits. But this misapplies the third factor. At issue is whether the DSWs had the opportunity to increase or decrease returns in their capacity as workers for the company.[66] It is irrelevant whether the DSWs could increase their total personal income by seeking other

---

[63] *Hopkins*, 545 F.3d at 344 (quoting *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1049 (5th Cir. 1987)).

[64] *Id*. at 343.

[65] *Id*.

[66] *See Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 384 (5th Cir. 2019); *Hopkins*, 545 F.3d at 344.

employment.[67] Accordingly, we agree with the district court's determination that this factor weighs in favor of the workers. The DSWs could not control when they worked or their rate of pay. In this respect, the workers "are far more closely akin to wage earners toiling for a living, than to independent entrepreneurs seeking a return on their risky capital investments."[68]

**4**

The fourth consideration is the skill and initiative required in performing the job.[69] "Generally, we look for some unique skill set . . . or some ability to exercise significant initiative within the business."[70] The district court concluded that this factor also favored the DSWs because BRR required them to receive specialized training. We agree. Although the training requirement ultimately was set by the Louisiana Department of Health and administered by a third party, BRR enforced the requirement and mandated that the DSWs meet the same qualifications as the company's other staff. Moreover, the workers were unable to exert initiative in the operations of the business. The workers could not request higher pay, alter the services they provided, or deviate from the training requirements of the company. Accordingly, the fourth factor weighs in favor of the DSWs' employee status.

---

[67] *See Halferty v. Pulse Drug Co., Inc.*, 821 F.2d 261, 267-68 (5th Cir. 1987).

[68] *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1049 (5th Cir. 1987).

[69] *Hopkins*, 545 F.3d at 345.

[70] *Id.* (citations omitted).

**5**

Finally, we examine "the permanency of the relationship."[71]  The district court determined this factor to be neutral because of the varying lengths of time the DSWs worked for BRR.  On appeal, the company contends that this conclusion was wrong because the DSWs worked on a "project-by-project basis."  BRR maintains that the DSWs could reject clients, and as a result, did not have a permanent relationship with the company.  But this contention overlooks the DSWs' contractual relationships with the company.  The workers' contracts do not mention the specific projects or clients to be served.  Instead, the contractual relationships are defined in temporal terms.  Because the DSWs worked with BRR for varying lengths of time, we agree with the district court.  The fifth factor is neutral.

After careful review of the record and with these five factors in mind, we agree with the district court.  The DSWs were employees of the company.  Accordingly, we affirm the district court's grant of summary judgment on the issue.

**B**

The FLSA's protections extend to two classes of employees: those engaged "in the production of goods for commerce"—commonly known as individual coverage—and those "employed in an enterprise engaged in commerce or in the production of goods for commerce"—also referred to as enterprise coverage.[72]  On appeal, BRR contends that the district court improperly denied the company's motion for summary judgment when

---

[71] *Hopkins*, 545 F.3d at 343.

[72] 29 U.S.C. § 207(a)(1); *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992).

concluding the DSWs were protected under the enterprise coverage provision. We review the district court's decision to deny summary judgment de novo and apply the same standards as the district court.[73]

BRR asserts that the DSWs could not seek redress under the FLSA because the company did not engage in interstate commerce. In short, the company contends that the DSWs' activities exclusively occurred in the State of Louisiana, and therefore the FLSA's coverage provisions do not apply. We disagree. The FLSA broadly defines the enterprise coverage provision to include an enterprise that has both (a) "employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and (b) an "annual gross volume of sales made or business done" that is "not less than $500,000."[74] Our precedent interprets these requirements broadly, finding that "any regular contact with commerce, no matter how small, will result in coverage."[75]

The record establishes that the DSWs satisfy both enterprise coverage requirements. As workers for BRR, the DSWs handled goods that "moved in or produced for commerce."[76] By the company's own admission, the DSWs dealt with medications, cleaning supplies, and food products—all of which are goods moved in commerce. Moreover, the company's gross volume of sales was over the $500,000 threshold. Accordingly, the district court correctly denied BRR's motion for summary judgment. The DSWs were employees covered under the FLSA's enterprise coverage provision.

_____

[73] *See, e.g.*, *Coffin v. Blessey Marine Servs., Inc.*, 771 F.3d 276, 279 (5th Cir. 2014).

[74] 29 U.S.C. § 203(s)(1).

[75] *Marshall v. Victoria Transp. Co., Inc.*, 603 F.2d 1122, 1124 (5th Cir. 1979).

[76] 29 U.S.C. § 203(s)(1)(A)(i).

No. 22-30547

\*       \*       \*

For the foregoing reasons, we AFFIRM.